[S. F. No. 7017.   In Bank.—January 25, 1918.]

ALEXANDER D. KEYES, as Executor, etc., et al., Appellants, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

MUNICIPAL CORPORATIONS — TAXATION — SAN FRANCISCO—TAXES PAID UNDER PROTEST — ACTION TO RECOVER — PLEADING — DEMURRER — PRESENTATION AND APPROVAL OF DEMAND.—The provisions of the charter of the city and county of San Francisco requiring before payment of demands against the city and county, presentation and approval thereof by certain officers, have no application to claims for the repayment or recovery of taxes paid under protest on the ground that the levy thereof was illegal and void and, therefore, a demurrer to the complaint in an action for the recovery of taxes paid under protest, which was sustained upon the ground of the failure to allege prior presentation and approval of the claim, was improperly sustained.

ID.—ACTION TO RECOVER TAXES PAID UNDER PROTEST—APPLICABILITY OF POLITICAL CODE, SECTION 3819.—Section 3819 of the Political Code providing a scheme for the recovery by suit of taxes illegally levied, when paid under protest, is applicable to the city and county of San Francisco, and a demurrer to a complaint in an action for the recovery of such taxes, upon the ground that the payment was voluntary because the charter does not provide for the payment of taxes under protest, is improperly sustained.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Alexander D. Keyes, *in pro. per.*, for Appellants.

Percy V. Long, Jesse H. Steinhart, Harry G. McKannay, and Maurice T. Dooling, Jr., for Respondent.

Drown, Leicester & Drown, Cushing & Cushing, Wm. H. Gorrill, A. R. Baldwin, Morrison, Dunne & Brobeck, Geo. J. Hatfield, C. Irving Wright, Elmer Westlake, and E. J. Foulds, *Amici Curiae.*

LAWLOR, J.—The court below sustained a general demurrer to the complaint and from the judgment thereupon

entered the plaintiffs prosecuted an appeal to this court which was transferred to the district court of appeal, third appellate district, for decision. After an affirmance of the judgment by the district court the case was ordered up for a rehearing by this court. The facts and general nature of the case, and the contentions of the parties, appear in the following excerpts from the opinion of the district court of appeal, which we hereby adopt and make a part of this opinion:

"The object of the action is to recover taxes alleged to have been paid under protest to the tax collector of the city and county of San Francisco, the plaintiffs claiming that the tax levy under and in pursuance of which said taxes were paid was illegal and void.

"The lands upon which the protested taxes were levied are situated in the city and county of San Francisco, and are owned and were assessed against the estate of Mary L. Zimmerman, testate of the plaintiff, Keyes, and the plaintiff, Mary E. Chilton.

"Section 11 of article III of the charter of said city (Stats. 1899, p. 261) provides that the supervisors thereof shall, on the last Monday of June in each year, levy the amount of taxes for city and county purposes required to be levied upon all property not exempt from taxation. 'The amount shall be sufficient to provide for the payment during the fiscal year of all demands upon the treasury authorized to be paid out of the same; but such levy, exclusive of the state tax, and the tax to pay the interest and maintain the sinking funds of the bonded indebtedness of the city and county, and exclusive of the tax to pay for the maintenance and improvement of the parks, squares and public grounds of the city and county, shall not exceed the rate of one dollar on each one hundred dollars valuation of the property assessed.' Section 13 of said charter provides, in part, as follows: 'The limitation in section eleven of this chapter upon the rate of taxation shall not apply in case of any great necessity or emergency. In such case the limitation may be temporarily suspended so as to enable the supervisors to provide for such necessity or emergency. No increase shall be made in the rate of taxation authorized to be levied in any fiscal year, unless such increase be authorized by ordinance passed by the unanimous vote of the supervisors and ap-

proved by the mayor. The character of such necessity or emergency shall be recited in the ordinance authorizing such action, and be entered in the journal of the board.'

"On June 21, 1911, the board of supervisors passed an ordinance purporting to suspend the dollar limitation. Said ordinance recited and declared that a great necessity and emergency exists within the city and county of San Francisco, which requires that the limitation upon the rate of taxation provided by said section 11 of article III of the charter of said city be temporarily suspended; that the character of such necessity and emergency is as follows, to wit: That taxable property of said city of approximately the value of $175,000,000.00 had been destroyed by the conflagration commencing on the 18th of April, 1906, and continuing for several successive days thereafter; that the assessment-roll for said year aggregated $525,000,000.00, but that at no time since said year has the assessment-roll of said city equaled said amount; that said fire checked the normal increase of said assessment-roll, 'and its restoration to the former amount has been impossible'; that the adoption by the people at the election of November 8, 1910, of senate constitutional amendment No. 1 (Stats. 1909, p. 1332, providing for the separation of state and local taxation, and providing that taxes levied, assessed and collected upon railroads and other public utilities and the franchises thereof shall be entirely and exclusively for state purposes) still further reduced the amount of taxable property of said city and county by approximately $75,000,000.00, and at the same time deprived the city of certain license tax revenues amounting to a large sum; that, by certain amendments to the charter, the salaries in the police and fire departments had increased to the amount of more than $1,000,000.00, and that by other amendments to said charter other additional expenses were added to the burdens of the city amounting in the aggregate to the sum of $100,000.00. The ordinance proceeds:

" 'That at the several sessions of the legislature since 1905, large additional expenses and financial burdens were laid upon the city and county of San Francisco, which expenses and burdens could not be anticipated and provided for under the provisions of the charter of said city and county when adopted in 1898; that furthermore, the legislature, by various

enactments, has materially reduced the sums heretofore received from the state in support of the public school system, which reductions could not be foreseen and provided for at the time of the adoption of the said charter.

" 'That the demands due to the rapid growth of the city, particularly in new districts of the city and county, developed as a result of shifting of population caused by the fire aforesaid, for additional public institutions, services and necessities have been great, which demands and necessities could not be reasonably foreseen.

" 'That the estimated and necessary expenditures of the city and county of San Francisco for the fiscal year commencing June 30, 1911, will be $11,938,750.00; . . .

" 'Section 3. There is hereby levied a tax of sixty-two and one-half cents upon each one hundred dollars of assessed valuation of property within the city and county of San Francisco as the same appears, or will appear upon the assessment-roll of said city and county for the fiscal year ending June 30, 1912, and the proceeds of such tax shall be part of the general fund of said city and county.

" 'Such tax is and shall be an increase of and an addition to the rate of one dollar taxation on each one hundred dollars of assessed valuation . . .'

"On the same day that said ordinance was passed, to wit, on the 21st day of June, 1911, the supervisors, by ordinance, fixed the tax rate and levied taxes upon all the taxable property in said city in accordance with the ordinance suspending the 'dollar limit.'

"The complaint alleged that the plaintiffs, upon paying the two installments of taxes levied under the suspension of the restriction referred to, protested, on each occasion of the payment of said installments, against the payment of so much of said levy as is in excess of the dollar restriction prescribed by the charter, and that they filed with the tax collector their protests in writing. Said written protests were expressly based upon section 3819 of the Political Code (which provides that where the owner of property assessed by the proper county authorities claims that such assessment is void in whole or in part and pays the taxes so assessed under written protest, specifying that the assessment is in whole or in part void, such payment shall not be regarded as a voluntary payment, and that such owner may, at any time

within six months after such payment, bring an action against the county in the superior court to recover back the taxes so paid).

"The points urged against the validity of the tax levy complained of by the plaintiffs may be stated in the language of their counsel as follows: 'The ordinance suspending the dollar limit is void, first, because it did not recite the character of any emergency or great necessity; secondly, because the alleged emergency levy was not made for the purpose for which it could lawfully be made, namely, to provide for the great necessity or emergency in question; thirdly, because the proceedings to levy taxes in excess of the dollar limit were begun and the ordinance making the levy was passed by the supervisors before the dollar limit was suspended.' "

Counsel for defendant concede that the determination by the supervisors of the existence of a "great necessity or emergency" is not conclusive, but may be reviewed by the courts. (See *San Christina Investment Co.* v. *City and County of San Francisco,* 167 Cal. 762, [52 L. R. A. (N. S.) 676, 141 Pac. 384]; *Spring Valley Water Works* v. *San Francisco,* 82 Cal. 286, [16 Am. St. Rep. 116, 6 L. R. A. 756, 22 Pac. 910, 1046]; *Davis* v. *Mayor of New York,* 1 Duer (N. Y.), 451, 497; *People* v. *Sturtevant,* 9 N. Y. 263, [59 Am. Dec. 536]; *Josselyn* v. *San Francisco,* 168 Cal. 436, [143 Pac. 705].) It is claimed, however, that the complaint is defective in two particulars: First, that according to the charter a prior demand within a specified time must have been approved by the board of supervisors and presented to the proper officer for payment, and the complaint contains no allegation that such a demand was presented or approved; second, that the payment of the taxes by the plaintiffs was voluntary, because the charter does not provide for the payment of taxes under protest, and section 3819 of the Political Code, in pursuance of which the protest alleged in the complaint was made has no application to taxes levied by the city and county of San Francisco.

As to the necessity of a prior presentation and approval of the demand, the provisions of the city and county charter, relied upon by the respondent, in so far as material, are as follows:

Section 19 (c. I of art. II). "Except as provided in Chapter III of Article III of this Charter, all demands payable out of the treasury must, before they can be approved by the Auditor or paid by the Treasurer, be first approved by the Board of Supervisors. . . ."

Section 13 (c. III of art. III), after providing for the allowance of fixed salaries, continues: "All other demands payable out of any funds in the treasury, must, before they can be allowed by the Auditor, or recognized, or paid, be first approved *by the department, board or officer, in which the same originated*, and in all such cases must be approved by the Supervisors."

Section 1 (c. IV of art. III). "The salaries and compensation of all officers, including policemen and employees of all classes, and all teachers in the public schools, and others employed at fixed wages, shall be payable monthly. Any demand upon the treasury accruing under this Charter shall not be paid, but shall be forever barred by limitation of time, unless the same be presented for payment, properly audited, within one month after such demand became due and payable; or if it be a demand which must be passed and approved by the Supervisors or Board of Education, or by any other Board, then within one month after the first regular meeting of the proper Board held next after the demand accrued; . . ."

Respondent cites no case in which it has been held that these provisions of the charter apply to a claim for the repayment of taxes paid under protest. *Geimann* v. *Board of Police Commrs.*, 158 Cal. 748, [112 Pac. 553], the only decision referred to arising under the present charter of San Francisco, was an action by policemen for salaries alleged to be due them. Such demands are specifically named in the charter and are clearly within the sections above quoted, but bear no resemblance to the claim in controversy. Neither can any reliance be placed upon such sweeping provisions as were considered in *Farmers and Merchants' Bank* v. *City of Los Angeles*, 151 Cal. 655, [91 Pac. 795], and the cases there discussed. (*McCann* v. *Sierra County*, 7 Cal. 121; *People* v. *Board of Supervisors*, 28 Cal. 429; *Alden* v. *Alameda County*, 43 Cal. 270; *Rhoda* v. *Alameda County*, 52 Cal. 350; *Bigelow* v. *Los Angeles*, 141 Cal. 503, [75 Pac. 111].) The cases against the city of Los Angeles turned upon the following

section of the charter: "No suit shall be brought upon any claim for money or damages against the city of Los Angeles, . . . until a demand for the same has been presented as herein provided, and rejected in whole or in part. . . ." The other cases cited were decided upon the basis of section 24 of the County Government Act (Stats. 1855, p. 151) which was repealed by the Political Code. (See *Lehn* v. *San Francisco*, 66 Cal. 76, [4 Pac. 965].) Section 24 provided that "No person shall sue a county in any case, for any demand, unless he or she shall first present his or her claim to the board of supervisors for allowance, and the same shall be rejected in whole or in part." Manifestly the sections of the San Francisco charter on the subject of prior demand are not of the sweeping and all-inclusive character of the provisions just quoted. We do not believe that the charter was intended to contain a clause requiring prior presentation of all classes of demands as a condition precedent to the right to sue thereon. The Consolidation Act (Stats. 1856, p. 145), to which the present charter is largely similar, had no such general provision. (See *Lehn* v. *San Francisco, supra; Bloom* v. *San Francisco*, 64 Cal. 503, [3 Pac. 129]; *Spangler* v. *San Francisco*, 84 Cal. 12, 20, [18 Am. St. Rep. 158, 23 Pac. 1091].) Moreover, to construe the sections of the charter relied upon by respondent as requiring a prior presentation and approval in the case of taxes paid under protest, would be inconsistent with other portions of that charter, which are themselves conclusive on the point that no such procedure was contemplated or provided for in this instance.

Section 7 (c. II of art. IV) reads: "Every demand upon the Treasurer, except the salary of the Auditor, must, before it can be paid, be presented to the Auditor, who shall satisfy himself whether the money is legally due, and its payment authorized by law, and against what appropriation payable and out of what fund it is payable. If he allow it he shall indorse upon it the word 'Allowed,' *with the name of the fund out of which it is payable,* and the date of such allowance, and sign his name thereto. *No demand shall be approved, allowed, audited or paid unless it* specify each special item, date and amount composing it, and *refer by chapter and section to the provisions of this Charter authorizing the same.*" Section 13 (c. III of art. III) provides: " . . . Every demand against the City and County shall, in addi-

tion to the other entries and indorsements upon the same required by this Charter, show: 1. The ordinance or authorization under which the same was allowed. 2. The name of the board, department or authority authorizing the same. 3. The fiscal year within which the indebtedness was incurred. 4. The appropriation provided to meet the same. 5. The name of the specific fund out of which the demand is payable. Each demand shall have written or printed upon it a statement that the same can only be paid out of the income and revenue provided, collected and paid into the specific fund in the treasury for the fiscal year within which the indebtedness was incurred, and shall refer to Chapter II. of this article, and be numbered with reference to the fund out of which it is payable."

The limitations above set out upon the payment of a demand under the charter show that the only classes of demands that could have been intended are those the payment of which the charter contemplates or authorizes. The charter nowhere provides for the repayment of taxes paid under protest, and under the provisions of the charter referred to there would be no authority in any officer of the municipality to approve or pay the plaintiffs' demand if the same were presented as contended for. In this situation, of course, such presentation and approval cannot be a condition precedent, and we conclude that the charter does not make it such.

The more important contention of the respondent, and the one upon which the district court upheld the action of the trial court in sustaining the demurrer to the complaint, is that section 3819 of the Political Code, in pursuance of which the protest was made, does not apply to the city and county of San Francisco, and the charter itself makes no provision for the payment of taxes under protest; consequently the payment was voluntary and no action to recover the taxes lies. It may be conceded that if there is no provision of law, applicable to the city and county of San Francisco, for the payment of taxes under protest, and for the recovery thereof after such protest, where the tax is illegal, then in the absence of an allegation of duress or coercion they were paid voluntarily and cannot be recovered. (McMillan v. Richards, 9 Cal. 365, 417, [70 Am. Dec. 655]; Bucknall v. Story, 46 Cal. 589, 597, [13 Am. Rep. 220]; Bank of Woodland v. Webber, 52 Cal. 73; Wills v. Austin, 53 Cal. 152; Dear v. Varnum,

80 Cal. 86, [22 Pac. 76]; *Justice* v. *Robinson,* 142 Cal. 199, [75 Pac. 776].) But we are unable to agree that section 3819 of the Political Code, the substance of which is set out in the portion of the opinion of the district court which is quoted above, has no application to the city and county of San Francisco. The provision in question is found in title IX of part III of the Political Code, which deals with the revenue of the state and is limited, so far as taxation is concerned, to the matter of state and county taxation. The particular chapter in which section 3819 appears (chapter VII) is entitled "Collection of Property Taxes." The Political Code, under the caption "The Government of Cities" (title III of part IV) contains the following provision (sec. 4390): "The assessor, in addition to the duties prescribed by the common council, must make out, within such time as the common council orders, a correct list of all the taxable property within the city limits, with the valuation thereof, which list certified by him must be returned to the common council. The mode of making out the list and of ascertaining the value of property, *and of collecting all taxes, is the same as prescribed in this code for assessing and collecting the state tax."* Taxation for municipal purposes is a municipal affair; accordingly a scheme of local taxation framed by a municipality whose charter empowered it to devise its own taxing system would be superior to the general law of the state on that subject. (*Ex parte Braun,* 141 Cal. 204, 209, [74 Pac. 780].) But if the charter itself does not contain such a scheme of taxation, and the legislative body of the municipality has also failed to devise a system, then there is no local law with which the general law can be inconsistent. Merely to authorize the board of supervisors to provide for the collection of taxes is not sufficient to exclude the operation of general laws for the collection of taxes. The provision of the charter in this instance (art. III, c. II, sec. 14) reads: "The Supervisors shall fix the amount of municipal revenues and provide for the collection thereof. . . ." If this can be taken as referring to the collection of taxes, it is a mere authorization to the supervisors; it is not self-executing, and without further action by the supervisors has no effect whatever upon the general law. Had legislation been enacted to carry out the power thus lodged in the municipality, it may be that whatever plan of

local taxation would thus have been adopted would have been paramount to the general law. In this case nothing was done by the supervisors to execute the power lodged in them by the charter. Under such circumstances only the general law governing the collection of taxes, which is the same for cities and for counties, exists in San Francisco, and obviously that is the only law that can be applied. There has been no other law on the subject since the charter was adopted, in 1899; that is the only law that could have been followed; it is rather strange that it should be questioned now. In arriving at the conclusion that section 3819, as well as the remainder of that portion of the Political Code pertaining to the collection of state and county taxes applies to the city and county of San Francisco, we do not rely upon former cases where the same remedy was sought and granted without question. (*Mackay* v. *San Francisco,* 113 Cal. 392, [45 Pac. 696]; *Mackay* v. *San Francisco,* 128 Cal. 678, [61 Pac. 382]; *Savings & Loan Society* v. *San Francisco,* 131 Cal. 356, [63 Pac. 665]; *Bank of California* v. *San Francisco,* 142 Cal. 276, [100 Am. St. Rep. 130, 64 L. R. A. 918, 75 Pac. 832]; *San Christina Inv. Co.* v. *San Francisco,* 167 Cal. 762, [52 L. R. A. (N. S.) 676, 141 Pac. 384]; *Josselyn* v. *San Francisco,* 168 Cal. 436, [143 Pac. 705].) The propriety of protesting the payment of city and county taxes was not in those cases doubted by the municipality or by this court, so the matter was not put in issue; but on the principle of contemporary construction this fact lends strength to the view that the collection of city and county taxes was not only governed by the general law as a fact, but also as a matter of intention.

The contrary result reached by the district court was based upon *Justice* v. *Robinson,* 142 Cal. 199, [75 Pac. 776]. In that case the plaintiff sought to recover taxes paid to a drainage district, the payment having been made under protest in pursuance of section 3819 of the Political Code. We there held that the statute creating the drainage district provided no method of paying taxes under protest, neither did it adopt the provisions of the Political Code relating to the collection of state and county taxes. We are in agreement with the holding in that case. But it has no application to the facts here presented. Once it is fully appreciated that the city and county of San Francisco is, by the very con-

stitutional provision authorizing its existence, a municipality, subject to all the restrictions of a city, it becomes clear that the same rules apply to it as apply to any city having a freeholders' charter. In municipal affairs the charter and any acts of the city in pursuance of it are paramount; but if, as here, the charter contains no provision on the particular subject that is self-executing, and nothing is done to carry the authorization of the charter into effect, then under the constitution as it was when this action was begun, the general law remains · paramount. (*Civic Center Assn.* v. *Railroad Commission*, 175 Cal. 441, [166 Pac. 351, 354].)

It is claimed by respondent that "the mode . . . of collecting all taxes," which is the language used in section 4390 of the Political Code, does not include the payment of taxes under protest, from which it would follow that while other provisions of the general law for the collection of taxes would apply to San Francisco, section 3819, which is in the same chapter, would have no application. Respondent relies upon *Farmers and Merchants' Bank* v. *Los Angeles, supra.* But that case was decided upon the point that the charter required a prior presentation of the claim, and what was. said about section 3819 was a mere expression of doubt on the subject and no decision was made thereon. The exact question was decided in *Hellman* v. *City of Los Angeles*, 147 Cal. 653, [82 Pac. 313], where the court said: "It is quite plain that section 3819, found in Chapter seven of the Political Code, under the title of 'Collection of Property Taxes,' is a part of the 'mode and manner' of collecting state and county taxes, and is none the less a part of that mode and manner in that it deals with the right of the taxpayer to pay under protest. It would be absurd to say that the mode and manner of collecting taxes was limited solely to the right of the state and its tax collectors, and had reference only to the duties of the taxpayer, and no pertinency whatever to the taxpayer's correlative rights. It is a provision definitely declaring a certain mode and manner in which the taxpayer may pay his taxes and preserve his rights in case the assessment and levy should be found void. The statute is in derogation of the general common-law rule as to voluntary payments, and is befitting to this more enlightened age."

Much of the difficulty that has arisen in this case is caused by the peculiar and anomalous position occupied by the city

and county of San Francisco, having the powers and exercising the functions both of a city and of a county. It would be a fruitless task even to attempt to segregate the activities of the municipality and of its officers and employees according as they partake of the character of city or county functions. In so far as San Francisco has the attributes of a county, section 3819 of the Political Code by its terms applies; in so far as it has the attributes of a city, section 3819 is made applicable by reason of the failure of the charter to provide any other system for the collection of taxes. The exact status of the city and county of San Francisco, whether it is to be determined by the provisions relating to counties or by those relating to cities is not, therefore, pertinent to the issue here presented. It is argued by respondent that the limitation on the rate of taxation cannot apply to taxes used for what are normally county purposes, because they are prescribed by the state, and no discretion as to their performance by the city and county of San Francisco would be permitted; consequently the dollar limit would apply only to taxation for municipal purposes, and it is not alleged that the tax rate for such purposes exceeds the limit. Granting that the city and county cannot by a limitation upon its tax rate disable itself from performing the functions properly imposed upon it by the state, it does not appear that the limit fixed in this instance is insufficient to enable such functions to be performed. The question of the due performance of county duties being eliminated, the abstract right to place a limit upon the rate of county taxation becomes unimportant.

It follows that the complaint was not defective in the particulars claimed, and that the demurrer was improperly sustained. We are not here concerned with the merits of plaintiffs' contention that the suspension of the dollar limit is invalid. That must in the first instance be determined by the trial court after answer by the respondent.

The judgment is reversed with directions to the lower court to overrule the demurrer to the complaint and permit the defendant to answer.

Shaw, J., Sloss, J., Melvin, J., and Angellotti, C. J., concurred.

In denying a rehearing, the court in Bank filed the following opinion on February 23, 1918:

THE COURT.—In its petition for a rehearing, the respondent urges that the opinion is in error in holding that section 4390 of the Political Code is applicable to the city and county of San Francisco. The criticism seems to be well founded. (*Ex parte Simpson*, 47 Cal. 127; *In re Pfahler*, 150 Cal. 71, 88, [11 Ann. Cas. 911, 11 L. R. A. (N. S.) 1092, 88 Pac. 270].)

But the decision may well stand without regard to section 4390. No mode for the collection of taxes has been prescribed in the charter itself, or by the legislative body of the city and county, under the authority given by the charter. Section 3819 of the Political Code is a general law, a part of the system established for the collection of county taxes. San Francisco is a county as well as a city. Unless the provisions of the general law for the collection of taxes apply to San Francisco, the city and county is left without any scheme for collecting taxes. In the absence, at least, of any provision on the subject contained in, or made pursuant to, the charter, the scheme of which section 3819 is a part must be held to be in force in the city and county of San Francisco.

The petition for a rehearing is denied.