[S. F. No. 14738. In Bank.—August 8, 1932.]

THE CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), Petitioner, v. C. J. COLLINS, as Registrar of Voters, etc., Respondent.

John J. O'Toole, City Attorney, and Dion R. Holm, Assistant City Attorney, for Petitioner.

Louis Heilbron as *Amicus Curiae* in Support of Petitioner.

Orrick, Palmer & Dahlquist for Respondent.

LANGDON, J.—This is a petition for a writ of mandate. On July 11, 1932, the board of supervisors of the City and County of San Francisco adopted a resolution, declaring that due to world-wide economic conditions, the public interest and necessity demand that provision be made for the care and maintenance of the indigent sick and dependent poor of said city and county; that the estimated cost for such care during the fiscal year 1932–1933 is $6,500,000;

that no part of said sum can be paid out of the ordinary annual income of the city and county in addition to other necessary expenses; and that consequently a bond issue is required to raise the money. This resolution was approved by the mayor on July 12, 1932, and published on July 13, 1932. On July 22, 1932, Ordinance No. 19.0711 was passed and approved by the mayor, calling for a special election to be held on August 30, 1932, to submit to the electors of the city and county the proposition of incurring a bonded debt for the said purpose and in the said sum. The ordinance sets forth the necessary details of the procedure in handling the election, and the form, denomination, interest rate and time of payment, and retirement of the bonds.

A certified copy of this ordinance was forwarded on July 22, 1932, to respondent Collins, registrar of voters of the city and county, who immediately gave notice of his refusal to place the proposition on the ballot. It is his contention that the proposed bond issue is unlawful, both for lack of authority to issue bonds under the circumstances, and by reason of improper procedure in the calling of the election. The present petition seeks to compel respondent to submit the proposition to the voters.

The petition states the foregoing facts, and further alleges that the investigations of committees appointed by the mayor, who have reported to the board of supervisors, show that San Francisco is now supplying food and other necessities of life to between 40,000 and 50,000 persons; and that during the coming winter it is estimated that between 40,000 and 60,000 *families* will need such assistance. It is further alleged that to raise the necessary money by taxation would require an additional tax of $1 on each $100 valuation of assessable property, which, in view of existing conditions, would cause such widespread default among taxpayers as to leave the city and county without funds to perform its ordinary functions.

The grave and immediate necessity of some salutary measures to care for persons made indigent as a result of the current economic depression is established by the allegations of the petition. The extraordinary number of people in need is a matter of such common knowledge that we may take judicial notice of it. (See *People* v. *Tossetti*, 107 Cal. App. 7. [289 Pac. 881].) But the method adopted by peti-

tioner to meet this situation presents serious questions for our determination.

The first question is whether, as counsel for the city and county contend, there is direct statutory authority for San Francisco to issue bonds for the relief of its indigent sick and dependent poor.

There are two statutes which refer to the duty or power of a county to give relief to the poor. Section 4041.16 of the Political Code provides in part: "Under such limitations and restrictions as are prescribed by law, and in addition to jurisdiction and powers otherwise conferred, the boards of supervisors, in their respective *counties, shall have the jurisdiction and powers* to provide for the care and maintenance of the indigent sick or dependent poor of the county and for that purpose to levy the necessary property or poll taxes, or both." It will be observed that this section is permissive, imposing no obligation; and that it refers to *counties* alone. The Pauper Act (Deering's Gen. Laws, 1931, vol. 2, p. 3130, Act 5814) provides in section 1: "Every county and *every city and county shall relieve and support* all pauper, incompetent, poor, indigent persons and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, or by their own means, or by state hospitals or other state or private institutions." This statute is mandatory, and applies to a *city and county* as well as to a county. There can be no question as to the applicability of the first statute, giving power to a county, and the second statute, imposing a duty on the county or city and county, to the existing situation, where large numbers of persons have become indigent through unemployment. The statutes are neither in terms nor spirit limited to the relief of chronic or permanent paupers, or any other class of poor persons, but extend to every person coming within the terms of the statute dependent upon public assistance for the necessities of life.

If, then, a county or city and county must support its poor, how may it raise the funds with which to do so? Section 4041.16 of the Political Code, quoted *supra*, permits the levy of taxes by a county for this purpose, but does not purport to restrict the county to this means. And section 4088 of the Political Code provides that a county may incur a

bonded indebtedness "for any purpose for which the board of supervisors are herein authorized to expend the funds of said county. . . . " This plainly permits a county to issue bonds for relief of the poor. It follows that San Francisco may, subject to any applicable statutory limitations, issue such bonds if it is a *county*. In other words, it has the duty as a city and county, under the Pauper Act, of supporting its poor by the usual method of taxation, but it can issue bonds under section 4088 of the Political Code only if it is a county.

"The consolidated city and county of San Francisco partakes of the nature of a city and county. *It has the powers and performs the functions of both.*" (*Nicholl* v. *Koster*, 157 Cal. 416, 420 [108 Pac. 302, 304].) (Italics ours.) "San Francisco is, therefore, both a city and a county, and, although the boundaries of the two bodies corporate are coincident, the electors within this territory vote for officers whose powers and duties are prescribed by general laws, and upon which the charter is silent. It must follow from this that some of its officers are city officers and others are county officers. There is nothing unusual or inconsistent in this. The government of the city is municipal, and the officers who are to exercise that government are municipal officers, but the territory in which that government is exercised is still a part of the state, and for all purposes other than municipal government, is subject to its control, with the right on the part of the state to authorize the election therein of such officers as may be required to execute its general laws, or to perform such functions, disconnected with the municipal government, as may pertain to the government of the state." (*Kahn* v. *Sutro*, 114 Cal. 316, 326 [33 L. R. A. 620, 46 Pac. 87, 91].) These cases establish the rule that the functions performed in the particular case determine whether San Francisco is to be viewed as a city or a county. (See, also, *Keyes* v. *San Francisco*, 177 Cal. 313 [173 Pac. 475]; *Crowley* v. *Freud*, 132 Cal. 440 [64 Pac. 696].) In *Nicholl* v. *Koster*, *supra*, it was pointed out that the matter in question—the probation system—concerned the whole state, and was therefore a matter of state policy and not a municipal affair. The duty to relieve the indigent, established by state statute, is likewise a matter of statewide interest, in which the city and county of San Fran-

cisco is governed by the general law, and acts as a county—an agent of the state. (See *County of Sacramento* v. *Chambers*, 33 Cal. App. 142 [164 Pac. 613].)

It follows that no inconsistent provisions in the San Francisco municipal charter could limit the performance of these county functions. (See *Nicholl* v. *Koster, supra*.) Actually, however, the charter does not purport to place any limitation upon the issuance of such bonds. Section 2 provides that San Francisco "shall have all rights and powers appropriate to a county, a city, and a city and county", subject to any restrictions in the charter. Section 3 provides that where "a procedure for the exercising of any rights or powers belonging to a city, or a county, or a city and county is provided by statute of the state of California, said procedure shall control and be followed" unless a different procedure is provided by charter or ordinance. Section 101, which incorporates the general law on creation of bonded indebtedness of *municipalities*, applies "except as otherwise provided in this charter", and hence does not prevent the creation of bonded indebtedness for county purposes, as an exercise of powers appropriate to a county under section 2.

 The second question is whether the method adopted for the submission of the proposition and the issuance of bonds was proper. The board of supervisors proceeded under section 4088 of the Political Code, which sets forth a detailed procedure, and which was therefore applicable both as an appropriate general law, and by virtue of the provisions of section 3 of the charter. Respondent, however, raises two objections to the proceedings. The first is that the specification of a *maximum* rate of interest for the bonds (six per cent) was improper, since the statute (Pol. Code, sec. 4088) requires "the rate of interest" to be stated. But said section permits a maximum rate of six per cent, and clearly there can be no objection to a method which permits the issuance of bonds at such a rate *or lower*, if it should be possible to do so. The voters who approve a maximum rate of six per cent impliedly approve any lower rate. (See *Cole* v. *Los Angeles*, 180 Cal. 617 [182 Pac. 436]; *Town of Martinez* v. *Johnson*, 201 Cal. 397 [257 Pac. 853].) The second objection is that the special election called under the provisions of section 4088 of the

Political Code could not lawfully be consolidated with the August primary election (see Deering's Gen. Laws, 1931, vol. 1, p. 1095, Act 2264, sec. 1), and that for the same reason it could not be held on the same date, with the same precincts. A sufficient answer is that although the elections are to take place on the same date and in the same precincts, they have not been consolidated and are not confused. Separate provision is made for inspectors, judges of election, and clerks; ballots are to be used for the special election, as distinguished from voting machines at the primary election; and the returns are to be separately canvassed. The elections are obviously distinct and separate. (See *Morgan* v. *City of Los Angeles,* 182 Cal. 301 [187 Pac. 1050]; *Mead* v. *City of Los Angeles,* 185 Cal. 422 [197 Pac. 65].)

 The final question which must be answered relates to the provisions of article IV, section 31, of the California Constitution, prohibiting the giving, lending or pledging of the credit of the state or any subdivision thereof, in aid of any individual, association, or corporation, and also prohibiting the making of any gifts of public money or other things of value to any individual, association, or corporation. It is contended that the proposed bond issue is a gift in violation of this section. It must, however, be considered as settled by the recent decision of this court in the case of *Patrick* v. *Riley,* 209 Cal. 350 [287 Pac. 455], that the expenditure of public money in pursuance of a public purpose is not within the scope of the prohibition. (See, also, *Sacramento County* v. *Chambers,* 33 Cal. App. 142 [164 Pac. 613]; *Veterans' Welfare Board* v. *Riley,* 189 Cal. 159 [22 A. L. R. 1531, 208 Pac. 678]; *Macmillan Co.* v. *Clarke,* 184 Cal. 491 [17 A. L. R. 288, 194 Pac. 1030]; *Pasadena High School Dist.* v. *Upjohn,* 206 Cal. 775 [63 A. L. R. 408, 276 Pac. 341]; *State* v. *Wienrich,* 54 Mont. 390 [170 Pac. 942]; *Commonwealth of Pennsylvania* v. *Liveright,* (Pa. 1932) 161 Atl. 697; *State* v. *Nelson County,* 1 N. D. 88 [26 Am. St. Rep. 609, 8 L. R. A. 283, 45 N. W. 33].)

Our conclusion is, therefore, that the City and County of San Francisco, acting through its board of supervisors, had power to issue the proposed bonds, and that the procedure followed was in accordance with all applicable laws. It is

accordingly ordered that the writ issue directing respondent to place the measure upon the ballot for submission to the voters in the forthcoming election.

Waste, C. J., Seawell, J., Tyler, J., *pro tem.*, Shenk, J., Curtis, J., and Preston, J., concurred.