[Civ. No. 38249. First Dist., Div. Two. Apr. 5, 1976.]

CITY AND COUNTY OF SAN FRANCISCO et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
LOIS LONG et al., Real Parties in Interest.

## Counsel

Thomas M. O'Connor, City Attorney, Kevin M. O'Donnell and William A. Barrett, Deputy City Attorneys, and Donald M. Solomon for Petitioners.

No appearance for Respondent.

Furth, Fahrner & Wong, Frederick P. Furth, Clyde W. Stitt and Gilbert T. Graham for Real Parties in Interest.

## Opinion

KANE, J.—This petition for extraordinary relief presents the question of the duty of the City and County of San Francisco to relieve and support

its indigent and dependent poor as required by the provisions of sections 17000 and 17001 of the Welfare and Institutions Code.[1]

Section 17000 provides that "Every county and every city and county *shall* relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions." (Italics added.)

Section 17001 provides that "The board of supervisors of each county, or the agency authorized by county charter, *shall* adopt standards of aid and care for the indigent and dependent poor of the county or city and county." (Italics added.)

This matter arose when real parties in interest, lawful residents of San Francisco and recipients of welfare benefits under the General Assistance Program of the City and County of San Francisco, sought by mandate to compel the City and County of San Francisco to adopt standards of aid and care for its indigent and dependent poor, contending that although required by section 17001 to do so, the city and county had failed to adopt such standards. Real parties also contended that the general assistance benefits provided by the City and County of San Francisco are arbitrarily low and insufficient to enable them to obtain the means of life, and that section 17000 impliedly requires the city to provide benefits sufficient to meet their minimum needs.

After a hearing on the application for writ of mandate, respondent superior court entered an order directing the social services commission to conduct a public hearing on notice to determine the facts necessary to establish standards of aid and care for the indigent and dependent poor of the City and County of San Francisco and to submit its findings relating to said standards to the court, with the further provision that the court would thereafter "determine said standards" and make such other and further orders as it deemed appropriate. Petitioners seek mandate in this court to compel respondent court to vacate its order and prohibition to restrain respondent court from conducting any further proceedings in this action, contending that respondent court has usurped their legisla-

---

[1]Unless otherwise indicated all references will be to the California Welfare and Institutions Code.

tive responsibilities and that they have no remedy by appeal.[2] We issued an alternative writ.

We begin with an examination of section 17000. ■ It is clear that section 17000 imposes upon the City and County of San Francisco a mandatory duty to relieve and support its indigents, and the excuse that it cannot afford to do so is unavailing (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 676 [94 Cal.Rptr. 279, 483 P.2d 1231]; *County of Los Angeles* v. *Payne* (1937) 8 Cal.2d 563, 573-575 [66 P.2d 658]; *San Francisco* v. *Collins* (1932) 216 Cal. 187, 190 [13 P.2d 912]). Thus, in *County of Los Angeles* v. *Payne,* the court upheld an emergency resolution appropriating $1 million over the amount provided for in the budget for the relief of the poor and indigent, holding that the expenditures provided in the resolution were mandatory expenditures required by law. In *San Francisco* v. *Collins,* it was held that a county's duty to support its indigents was mandatory; and the court permitted the county to issue bonds for the support of the large numbers of persons who had become indigent through unemployment, as an alternative to the usual method of taxation. And in *Mooney* v. *Pickett,* the court rejected San Mateo's contention that it could not afford to extend general assistance benefits to employable single males, taking note that general assistance was the "residual fund by which indigents who cannot qualify under any specialized aid programs can still obtain the means of life." In each of these cases, the Supreme Court considered the plight of the taxpayers, but in each case concluded that their burdens were not so grievous as to permit indigents, in the midst of plenty, to go hungry, cold and naked, without fault (*County of Los Angeles* v. *Payne, supra,* at p. 573; *Mooney* v. *Pickett, supra* at p. 680).

■ That the language of section 17001 likewise imposes a mandatory duty upon the City and County of San Francisco to adopt standards of aid and care for the indigent and dependent poor of the city and county is settled by the use of the word "shall." Section 15 specifies that " ' "Shall" is mandatory . . .' " (*Mooney* v. *Pickett, supra* at p. 676, fn. 7).

At the hearing in the superior court, testimony taken from Dianne Feinstein, president of the board of supervisors, Yori Wada, a commissioner of the social services commission, and Kenneth Bryant, then acting general manager of the department of social services, established

---

[2]Because of the interim nature of the order, petitioners' appeal was dismissed as premature on November 17, 1975 (1 Civ. No. 37929).

that the monthly maximum grant under San Francisco's flat-grant system of providing relief to persons on general assistance is $83 for men and $88 for women. San Francisco's neighboring counties all have higher grant levels. The general assistance grant in Marin is $195, in Santa Clara $148, in San Mateo $143, in Alameda $115, and in Contra Costa $113. The evidence was all to the effect that no standards of aid and care had been adopted by the board of supervisors, the social services commission or the department of social services, and that the department of social services had been forced to divide among the indigent and dependent poor such sums as the mayor and the board of supervisors had deigned to appropriate.

The evidence shows that on December 16, 1974, after conducting a study of the General Assistance Program in San Francisco, the San Francisco Lawyers Committee for Urban Affairs pointed out that the levels of aid extended by San Francisco to its indigents fell far below all recognized indices of minimum poverty standards, and that the maximum grant levels at that time would have to rise immediately to approximately $140 a month to meet even the lowest minimum poverty standards. The study concluded that San Francisco had been violating state statutes since 1971 in the conduct of its General Assistance Program.[3] The record also shows that on October 30, 1974, Supervisor John Barbagelata, by memorandum, called the attention of the members of the finance committee of the board of supervisors to the "inhumane" level of assistance resulting from actions of the board. Despite the foregoing, nothing has been done since then by the board of supervisors or the agency authorized by county charter to adopt standards of aid and care, or to increase the level of aid, and the plight of the indigents, already dire, has deepened with the continued escalation in the cost of living.

City and County of San Francisco contends that although the amounts of aid provided arguably may be inadequate, such amounts are substantial, and, indeed, not a sham, and that respondent court, having been confronted with uncontraverted evidence that the City and County of San Francisco has made a "colorable" effort to provide relief for its indigent and dependent poor, should stop any further inquiries. The City and County of San Francisco relies upon *County of L. A.* v. *Dept. of Social Welfare* (1953) 41 Cal.2d 455, 458 [260 P.2d 41]; *Berkeley* v.

---

[3] In 1971, although the cost of living was increasing, the maximum grant of $110 monthly was reduced to the present levels by the actions of the board of supervisors, who were besieged at the time by rumors of a mass "hippie" invasion of the city.

*Alameda County Bd. of Supervisors* (1974) 40 Cal.App.3d 961, 971 [115 Cal.Rptr. 540]; *Adkins* v. *Leach* (1971) 17 Cal.App.3d 771, 778-779 [95 Cal.Rptr. 61]; and *Patten* v. *County of San Diego* (1951) 106 Cal.App.2d 467, 470 [235 P.2d 217], in which the courts interpreted section 17001 to confer upon the counties a broad discretion to determine eligibility for, the type and amount of, and conditions to be attached to indigent relief. That interpretation was qualified in *Mooney* v. *Pickett, supra,* wherein the court pointed out that "This discretion, however, can be exercised only within fixed boundaries. ■ In administering General Assistance relief the county acts as an agent of the state. (*San Francisco* v. *Collins* (1932) 216 Cal. 187, 192 [13 P.2d 912].) When a statute confers upon a state agency the authority to adopt regulations to implement, interpret, make specific or otherwise carry out its provisions, the agency's regulations must be consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose. (Gov. Code, § 11374.) . . ." (4 Cal.3d at p. 679).

Although section 17001 provides the vehicle by which the City and County of San Francisco *must* implement the provisions of section 17000, it is clear that the City and County of San Francisco has failed to comply with that mandate. Because the actual cost of living varies in each county, the failure of the City and County of San Francisco to adopt standards of aid and care has left this reviewing court with no means to determine to what extent the City and County of San Francisco is complying with its mandatory duty to relieve and support its indigent poor under section 17000. (Cf. *California Assn. of Nursing Homes, etc., Inc.* v. *Williams* (1970) 4 Cal.App.3d 800, 810-811 [84 Cal.Rptr. 590, 85 Cal.Rptr. 735].) Real parties, however, produced evidence at the hearing to the effect that a minimum of $161 was necessary for the survival of an indigent in San Francisco. In the absence of any standards, we can only conclude that the fixing of a level of aid so far below what is necessary to survive to persons who have no other means by which to live is arbitrary and capricious and not consistent with the objects and purposes of the law relating to public assistance programs set forth in section 10000.[4]

---

[1]Section 10000 at the time of the hearing read as follows: "The purpose of this division is to provide for protection, care, and assistance to the people of the state in need thereof, and to promote the welfare and happiness of all of the people of the state by providing *appropriate aid and services* to all of its needy and distressed. It is the legislative intent that aid shall be administered and services provided promptly and humanely, with due regard for the preservation of family life, and without discrimination on account of race, national origin or ancestry, religion, or political affiliation; and that aid shall be so administered and services so provided as to encourage self-respect, self-reliance, and the desire to be a good citizen, useful to society." (Italics added.) This section was amended

Moreover, section 11000 admonishes that " 'The provisions of law relating to a public assistance program shall be liberally construed to effect the stated objects and purposes of the program.' " (*Mooney* v. *Pickett, supra,* p. 676, fn. 8.) We have no doubt that when statutes affecting the well-being—perhaps the very survival—of citizens of this state are being violated with impunity by the City and County of San Francisco, an agent of the state, the courts, as final interpreters of the law, must intervene to enforce compliance (*Mooney* v. *Pickett, supra,* pp. 679-681; *Cooper* v. *Swoap* (1974) 11 Cal.3d 856, 864 [115 Cal.Rptr. 1, 524 P.2d 97]; *Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697]; *Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405]).

■ We conclude that, under the circumstances shown here, the court's order commanding the social services commission to determine the facts necessary to establish standards of aid and care for the indigent and dependent poor of the City and County of San Francisco as mandated by section 17001 and to submit to the court its findings relating to said standards was fully within the scope of its authority.[5] We agree with petitioners, however, that portions of respondent court's order are overly broad, in that petitioners are not bound by any provision of law to conduct public hearings on notice in order to determine the facts necessary to adopt the standards mandated by section 17001, and, further, that the court would be encroaching on legislative territory should it undertake to "determine said standards." The duty to adopt standards is clearly placed, in this instance, upon the department of social services, the agency authorized by the county charter to adopt such standards pursuant to the provisions of section 17001, and we are

by the Legislature in 1975, chapter 1129, effective January 1, 1976, by adding (1) "sex, marital status," after "ancestry, religion"; and (2) ", to the extent not in conflict with federal law," before "as to encourage." (No. 7 Deering's Adv. Legis. Service, p. 339.)

[5] The superior court directed its order to the social services commission, after making a determination that the social services commission was the "agency authorized by county charter" under section 17001 and thus charged with the responsibility of adopting standards of aid and care for the indigent and dependent poor of the city and county. Reference to the charter reveals that section 3.570 of the charter establishes a social services department. This department consists of a social services commission of five members, a director of social services, and such employees and assistants as may be necessary to carry out the work and functions of said department. Section 3.572 provides that "The *social services department* shall perform such other duties . . . as may be authorized by the board of supervisors of the City and County of San Francisco or *required by the government of* the United States or *the State of California* or any department or agency thereof." (Italics added.) We are of the opinion that the order should be directed to the department of social services and to the general manager of the department as well as to the social services commission.

confident that the department of social services will pursue methods of inquiry consistent with the discharge of its responsibilities under this section.

The alternative writ is discharged, and the petition for peremptory writ is denied, except that (a) the order of August 8, 1975, is directed to the department of social services and to the general manager of the department of social services, in addition to the social services commission; (b) all references to a public hearing on notice are deleted from the order; and (c) the last line of paragraph 3 is amended to read: The court will thereafter *review the appropriateness of the standards adopted by the Department of Social Services* and make such other and further orders as the court deems appropriate. The standards of aid and care adopted by the City and County of San Francisco pursuant to the mandatory duty imposed upon it by section 17001 must be open to public inspection as required by the California Public Records Act (Gov. Code, § 6250 et seq.). (55 Ops.Cal.Atty.Gen. 67 (1972).)

Taylor, P. J., and Rouse, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied June 9, 1976. Clark, J., and Richardson, J., were of the opinion that the application should be granted.