TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-502 |
| of | : | |
| | : | November 12, 1997 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE JAMES B. LINDHOLM, COUNTY COUNSEL, SAN LUIS OBISPO COUNTY, has requested an opinion on the following question:

May the electorate of a general law county enact through the initiative process an ordinance that would require a vote of the people for (1) any closure, sale, or lease of a county hospital, (2) any action transferring the management of a county hospital from the board of supervisors to another entity, or (3) any reduction or elimination of medical services at a county hospital?

CONCLUSION

The electorate of a general law county may not through the initiative process enact an ordinance that would require a vote of the people for (1) any closure, sale, or lease of a county hospital, (2) any action transferring the management of a county hospital from the board of supervisors to another entity, or (3) any reduction or elimination of medical services at a county hospital.

ANALYSIS

In this request for our opinion we are asked if the electorate of a general law county may, through the initiative process, enact an ordinance that would require prior voter approval with respect to changes in the management or control of a county hospital by the board of supervisors. We conclude that the electorate may not enact such an ordinance through the initiative process.

In article II, sections 8 and 9 of the Constitution, the people have reserved to themselves the powers of initiative and referendum with respect to state laws, that is, the power to propose (initiative) or reject (referendum) such laws. In section 11 of the same article, the people have similarly reserved to themselves initiative and referendum powers in "each city and county under procedures that the Legislature shall provide." We are here concerned with the county initiative process, for which the Legislature has provided facilitating procedures. (Elec. Code §§ 9100-9126.) Pursuant to the governing statutory scheme, the

electorate of a county may propose an ordinance through a petition signed by the requisite number of voters, requiring the board of supervisors to either adopt the ordinance or submit the matter of its adoption to the electorate.

The right of the local electorate to initiate ordinances is generally coextensive with the power of the local governing body to enact legislation. (*De Vita* v. *County of Napa* (1995) 9 Cal.4th 763, 775; *Voters for Responsible Retirement* v. *Board of Supervisors* (1994) 8 Cal.4th 765, 777; *Simpson* v. *Hite* (1950) 36 Cal.2d 125, 129.) "`Only ordinances which involve an exercise of legislative power may be enacted by initiative.' [Citations.]" (*Arnel Development Co.* v. *City of Costa Mesa* (1980) 28 Cal.3d 511, 516, fn. 6.) "[T]he purpose of an initiative is to enact laws the local governing body could enact." (*Memorial Hospitals Assn.* v. *Randol* (1995) 38 Cal.App.4th 1300, 1310.) In this respect, we note that the Constitution prohibits boards of supervisors of general law counties from adopting ordinances that conflict with state law. Section 7 of article XI of the Constitution provides:

"A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." **Footnote No. 1**

Thus, neither a board of supervisors of a general law county *nor the electorate through the initiative process* may adopt ordinances that conflict with state law.

It is also now well settled that the initiative power may not be exercised by the local electorate where the Legislature has designated the local governing body as its agent to administer policies of statewide concern. (*Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 500-507; *Yost* v. *Thomas* (1984) 36 Cal.3d 561, 570; *Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 596, fn. 14; *Simpson* v. *Hite*, *supra*, 36 Cal.2d at 129-135; *Da Vita* v. *County of Napa*, *supra*, 9 Cal.4th at 780-781; *W.W. Dean & Associates* v. *City of South San Francisco* (1987) 190 Cal.App.3d 1368, 1374-1379; *Ferrini* v. *City of San Luis Obispo* (1983) 150 Cal.App.3d 239, 248-249; *Merriman* v. *Board of Supervisors* (1983) 138 Cal.App.3d 889, 891-892; *Redevelopment Agency* v. *City of Berkeley* (1978) 80 Cal.App.3d 158, 167-171; *Friends of Mount Diablo* v. *County of Contra Costa* (1977) 72 Cal.App.3d 1006, 1010-1012; *Walker* v. *City of Salinas* (1976) 56 Cal.App.3d 711, 715-717; *Fletcher* v. *Porter* (1962) 203 Cal.App.2d 313, 318-321; 66 Ops.Cal.Atty.Gen. 258, 259-261 (1983).) As recently explained by the Supreme Court, the Legislature may "delegate the exercise of [legislative] authority exclusively to the governing body, thereby precluding initiative and referendum." (*Da Vita* v. *County of Napa*, *supra*, 9 Cal.4th at 776.)

Here, we are concerned with a county hospital. As to the property of a county, the court in *County of Marin* v. *Superior Court* (1960) 53 Cal.2d 633, 638-639, stated:

". . .*[A]ll* property under the care and control of a county is merely held in trust by the county for the people of the entire state. The county is merely a political subdivision of state government, exercising only the powers of the state, granted by the state, created for the purpose of advancing `the policy of the state at large, for purposes of political organization and civil administration, in matters of finance, of education, of travel and transport, and expressly for the general administration of justice.' [Citations.] The county holds all its property, therefore, . . as agent of the state. [Citations.]"

In *County of Los Angeles* v. *Graves* (1930) 210 Cal. 21, 25, the court observed:

". . . If there be legal title in the county, it is held in trust for the whole public. In the absence of constitutional restrictions, the Legislature has full control of the property so held by the counties as agencies of the state. [Citation.] . . . ."

The Legislature has enacted a comprehensive statutory scheme governing the acquisition, sale, lease, or other disposition of county real property. (Gov. Code, §§ 25520-25588.) Government Code section 25521 provides:

"The board of supervisors of any county may sell or lease for a term not exceeding 99 years, without a vote of the electors of the county first being taken, any real property belonging to the county."

Not only has the Legislature vested the authority to dispose of or manage county property specifically in the "board of supervisors," the establishment and administration of county medical facilities (Health & Saf. Code, §§ 1440-1475) rests solely in the board of supervisors (Health & Saf. Code, § 1441). Health and Safety Code section 1442.5 expressly provides in part:

"Prior to closing a county facility, eliminating or reducing the level of medical services provided, or prior to the leasing, selling, or transfer of management, the board shall provide public notice, including notice posted at the entrance to all county health care facilities, of public hearings to be held by the board prior to their decision to proceed. The notice shall be posted not less than 14 days prior to the public hearings. The notice shall contain a list of the proposed reductions or changes, by facility and service. The notice shall include the amount and type of each proposed change, the expected savings, and the number of persons affected.

"Notwithstanding the board's closing of a county facility, the limitation of or reduction in the level of services provided, or the leasing, selling, or transfer of management of a county facility subsequent to January 1, 1975, the county shall provide for the fulfillment of its duty to provide care to all indigent people, either directly through county facilities or indirectly through alternative recipients."

Accordingly, the Legislature has designated the board of supervisors as its agent to administer public hospital services in each county. (See Health & Saf. Code, §§ 1442.5, 1445; Welf. & Inst. Code, § 14000.2; *City and County of San Francisco* v. *Superior Court* (1976) 57 Cal.App.3d 44, 46-47; 38 Ops.Cal.Atty.Gen. 176 (1961).) It has expressly authorized boards of supervisors to sell or lease county property without voter approval. (Gov. Code, § 25521.) However, before selling, leasing, transferring the management of, or reducing the level of medical services in a county hospital, the public must be notified and public hearings held. (Health & Saf. Code, § 1442.5.) **Footnote No. 2**

Since a local initiative measure may not conflict with state law, a vote of the people may not be required for the sale or lease of a county hospital. (Gov. Code, § 25521.) Because the Legislature has designated the board of supervisors as its agent to manage county hospital medical services, a local initiative may not grant voters "approval authority" over management decisions. (See *De Vita* v. *County of Napa*, *supra*, 9 Cal.4th at 775-777; *Committee of Seven Thousand* v. *Superior Court*, *supra*, 45 Cal.3d at 500-507; *Board of Education* v. *Superior Court*, *supra*, 93 Cal.App.3d at 584-585.) As recently affirmed by the Court of Appeal in *Memorial Hospitals Assn.* v. *Randol*, *supra*, 38 Cal.App.4th at 1313:

". . . Where the Legislature has enacted a statewide policy and has assigned to a particular local body the duty to implement that policy, the Legislature thereby places implementation of the statewide policy beyond the reach of initiative and referendum. [Citations.]"

In 7 Ops.Cal.Atty.Gen. 85 (1946), we concluded that a local initiative may not require a board of supervisors to contract with a hospital district to provide medical care for indigent persons, stating:

"In the present situation the care of the indigent sick is a matter which requires the constant administrative attention of the board of supervisors and their use of discretionary power

to decide the mode and manner of care. A contract with a public agency such as the proposed hospital district would be the proper subject of a resolution by the board after consideration of the details of the service to be rendered and the funds available. This would be an administrative function of the board and a decision to contract after an offer to perform by the hospital district . . . .

> "It is our opinion that . . . an ordinance which would itself effectuate or require the supervisors to effectuate a contract with a hospital district constitutes an interference with the executive and administrative powers of the board of supervisors and is not within the initiative power." (*Id.*, at p. 87.)

We reaffirm our 1946 opinion, which we find to be fully supported by case law developed over the past 50 years.

In answer to the question presented, therefore, we conclude that the electorate of a general law county may not enact through the initiative process an ordinance that would require a vote of the people for (1) any closure, sale, or lease of a county hospital, (2) and action transferring the management of a county hospital from the board of supervisors to another entity, or (3) any reduction or elimination of medical services at a county hospital.

\* \* \* \* \*

**Footnote No. 1**
The promotion of the public health and welfare of the citizens of a county falls within the powers conferred by section 7 of article XI of the Constitution. (*Goodall* v. *Brite* (1936) 11 Cal.App.2d 540.) **Return to text**
**Footnote No. 2**
As one court has observed, if voters are dissatisfied with decisions made by their elective officers, "they are not without a remedy; the *recall procedure* is expressly made applicable. [Citations.]" (*Board of Education* v. *Superior Court* (1979) 93 Cal.App.3d 578, 585.)