THE PEOPLE *ex rel.* JONATHAN HUNT *v.* THE BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN FRANCISCO.

WHEN WRIT OF MANDATE MAY BE APPLIED FOR.—The writ of mandate may be applied for to ascertain whether a Board, officer, or tribunal has the power to perform the duty required by the relator, and mandamus is the only speedy and adequate remedy that the relator possesses to test the question of power.

WHEN WRIT OF MANDATE WILL BE REFUSED.—When the Board, officer, or tribunal against which the writ of mandate is asked has not the legal authority to perform the act required by the relator, the writ will be refused.

MANDAMUS AGAINST BOARD OF SUPERVISORS.—If a Board of Supervisors of a county refuse to act on a claim against the county presented to them, for the reason that they have not the power to approve of it, mandamus is the proper action to determine whether they possess such power.

COMMISSIONS OF COLLECTOR OF SAN FRANCISCO.—The Collector of Taxes for the City and County of San Francisco is not entitled to any commissions or salary for the collection of that portion of the revenues assessed and collected for the use of said city and county.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The relator commenced the action on the 6th day of April, 1861, and upon judgment having been rendered against him in the Court below, appealed.

The other facts are stated in the opinion of the Court.

*John B. Felton,* for Appellant.

*Horace Hawes,* for Respondents.

By the Court, RHODES, J.

Jonathan Hunt, the former Tax Collector of San Francisco, filed his petition in the District Court for a writ of mandamus to compel the Board of Supervisors of said city and county to approve his demand upon the Treasury for commissions alleged to be due him for the collection of taxes. The Court, having issued an alternative writ and the cause having been heard, denied the petitioner's motion that the mandamus be made peremptory and dismissed the proceedings, on the ground that the relator was not entitled to his remedy in that proceeding. The respondents now insist that mandamus is not the proper remedy in the case. They state in their answer to the petition that they have not lawful authority to approve the demand of the relator on the Treasury, because the same is not authorized by law. Other grounds of refusal to approve the accounts are alleged, but it is unnecessary to consider them, because if the Board based their refusal upon the want of legal authority to approve the demand, the objection to the account for matters of form, or because the Tax Collector was indebted to the Treasury, or had not discharged his duties according to law, would be idle and useless—as nugatory in every respect as would be the subsequent proceedings of a Court after it had

adjudged that it had no jurisdiction of the subject matter of the action.

The refusal to approve the demand on the alleged ground of the want of lawful authority to approve it, amounts in substance to a refusal to act upon it.

The question whether the Board has, under the law, competent power to allow or approve the demand, which is strictly a jurisdictional question, stands *in limine* and must be first disposed of, and if determined against the asserted power, the Board can proceed no further; but if the decision is in favor of such jurisdiction, then the Board may consider and pass upon all the questions they have raised in this case or any others that may be presented, bearing any relation to the demand under consideration. If the claimant is dissatisfied with the determination of the Board, after they have proceeded to act upon it, and have disallowed it wholly or in part, he may then commence his action against the county; but he has no cause of action against the county for the recovery of a sum of money until he has presented his claim or demand to the Board for allowance, and the Board, after consideration thereof, have failed or refused to allow the same or some part of it. (Wood's Digest, p. 696, Sec. 24; *Price* v. *Sacramento County*, 6 Cal. 254; *McCann* v. *Sierra County*, 7 Cal. 121.) We are cited to no law, that exempts the City and County of San Francisco from the operation of the general Act above cited.

If the Board, instead of proceeding to consider the claim, refuse to act upon it—and we consider their allegation that they have not legal authority to approve the claim, though coupled with reasons why they cannot approve it, if they should consider it, as simply equivalent to a refusal to act for the want of legal power to approve—then mandamus is the proper remedy, and we think the only plain, speedy and adequate remedy that the claimant possesses, to test this preliminary jurisdictional question. (*Frank* v. *San Francisco*, 21 Cal. 668; *Emeric* v. *Gilman*, 10 Cal. 404; *San Francisco Gas Company* v. *Board of Supervisors of San Francisco*, 11 Cal.

42; *People ex rel. Plumb* v. *Cortland County*, 24 How. Pr. 119 ; *People ex rel. Hasbrouck* v. *New York*, 21 Id. 322.)

If the decision of the Board on that question is sustained, the Court refuses to issue the peremptory mandamus and the controversy between the claimant and the Board there ends; but if, on the other hand, the decision is against the Board, then they must proceed to consider the claim, and if the claimant is dissatisfied with their action, he may commence a suit against the county. The Court will not, under the proceedings by mandamus, control or interfere with the discretion of the Board in matters where they possess it, or supervise their actions upon questions of fact. It interposes its authority upon questions of law, and simply directs the Board *to proceed to act* upon the claim, in the same manner that they would have done, had they determined the legal question, as the Court decide it.

It by no means follows, that because it is held that mandamus is the proper remedy, by which to ascertain whether the Board possesses the power asserted by the relator, that therefore, they must have and exercise that power in the given case, but the Court having investigated the question under the alternative writ, and determined that the Board has not legal authority to proceed as the relator has demanded of them, will refuse the peremptory mandamus and dismiss the proceedings. Cases almost without number are found in the books, in which mandamus was resorted to as the appropriate remedy to ascertain if the Board, officer or tribunal, had the power to perform the duty required by the relator ; and the Court refused the peremptory writ and dismissed the proceedings, not because it was not the proper remedy, but because the Board, officer or tribunal were not required by law to perform the duty.

It is said by Mr. Justice Harris, in *The People* v. *Supervisors of Greene*, 12 Barb. S. C. 220 : "To entitle him to this remedy (mandamus) two things must appear : First, that he has a legal right to have something done by the party to whom he seeks to have the writ directed, which has not been done ; and sec-

ondly, that he has no specific legal remedy to which he can resort to compel the performance of this duty." We have already seen that he has no legal remedy against the county until the Board has acted on his claim. Has the relator a legal right to have the Board proceed to allow or approve his demands upon the Treasury of the city and county? If he does not possess that right, then the judgment of the Court below refusing to issue the peremptory writ and ordering the proceedings to be dismissed must be affirmed. This brings us to the consideration of the principal question in the case, which, in view of its public importance, we ought to have been permitted to pass upon disembarrassed of the preliminary point we have had before us.

That question is whether the Tax Collector is entitled to be paid from the Treasury of the city and county, the commissions he claims in this case. This involves the consideration of many sections of the Act of the Legislature passed April 19th, 1856, organizing the government of the City and County of San Francisco, commonly known as the Consolidation Act, and of the Acts amendatory thereof; also of the general revenue laws in force from 1854 to 1860, as well as of special revenue laws applicable to San Francisco alone.

The Tax Collector presented to the Board his three accounts, claiming that there was due to him from the city and county, commissions amounting in the aggregate to seven thousand three hundred and three dollars and fifty-nine cents, for the collection of that portion of the revenue which was assessed and collected for the use of the city and county and paid over to the Treasurer by him in 1860, the main portion paid by him having been assessed for the years 1859–60 and 1860–61. The accounts do not include any charge for the collection of the State's portion of the taxes, but the commissions are calculated and charged on that portion which was collected as the portion belonging to the city and county.

The commissions are computed and claimed at the rates provided in the Revenue Act of 1855. (Statutes 1855, p. 120.)

The Board deny his right to those commissions and say that it was intended by the Consolidation Act that he should be compensated for all his services, by fees and by commissions payable out of the State's portion of the funds.

One of the leading objects intended to be accomplished by the Consolidation Act, was to secure economy in administering the city and county government. A large amount of fees and compensations in various forms, before that time payable out of the County Treasury, was stricken off in the Act, and officers were required in a great measure to look to other sources for the payment of their services.

Instead of keeping up two sets of officers—one for the city, and another for the county, as was previously done—the Act provided for one set of officers, who were required to discharge the duties that had pertained to the officers of both the city and county government. Many other provisions were made, calculated to relieve the Treasury of the city and county in some measure from the burdens of the municipal government.

All the officers charged with the maintenance of that government, were named in the Act, and the compensation to which each of them should be entitled, whether by the way of salaries, fees or commissions, was expressly mentioned—unless the Tax Collector formed an exception—and in case where the compensation was payable out of the City and County Treasury, the amount, or the maximum amount, was specially fixed in the Act.

The Tax Collector, under the Consolidation Act of 1856, was charged with the performance of only a portion of the duties that devolve upon that office in other counties, under the general revenue laws. At the passage of that Act the Sheriff was the Collector of Taxes in San Francisco, but it was provided by section seventy-seven of the Act that all taxes should be directly paid to the Treasurer; " and in default of such payment before the time when the Tax Collector may be authorized by law to seize and sell the property therefor, the said Tax Collector shall proceed to collect said taxes, together with his legal fees, by seizure and sale of the property liable,

in the mode prescribed by law for the collection of such State and county taxes," and that upon the payment of the taxes to the Treasurer before the property was sold, and upon the payment to the Tax Collector of his fees, for the services rendered by him, the property should be released from sale. This section clearly entitled him to all the fees for his services, that were allowed by law to the officer, whose duty it was, under the revenue laws, to seize and sell property for delinquent taxes.

The Act has not directly made provision for the payment of any further sum for his services, either by way of salary or a commission on the amount collected by him; and as if to make it clear and unmistakable that it was not intended that he should not receive the commissions given by the general revenue laws upon the city and county taxes, it was provided by section seventy-eight that upon his final settlement, according to the revenue law, he should pay over to the Treasurer "the full amount of taxes by him collected and not previously paid over, without any deduction of commissions, fees or otherwise." Thus, the commissions that the Tax Collectors in other counties were entitled to retain, were, by the Consolidation Act, required to be paid into the Treasury, and if he would claim the repayment thereof, he must show the provision of law authorizing the payment to be made out of the Treasury; for section eighty-two, which seems to have been designed to cut off all constructive fees, commission and compensation, declares that "no payments can be made from the Treasury, or out of the public funds of said city and county, unless the same be specially authorized by this Act." This restriction would not prevent him from receiving from the Treasury, payable out of the State's funds, the commissions for collecting the State's portion of the taxes. Provision is made in the Act for the payment of all other officers, who are entitled to be paid out of the city and county funds in the Treasury; but no section of the Act is cited specially authorizing any payment therefrom to the Tax Collector.

Under the Revenue Act of 1854, which was in force at the

time of the passage of the Consolidation Act, the Sheriff was the collector of all the property taxes, and he was authorized to collect his own fees, and on settlement with the Auditor, to retain his commissions on the amount collected, and was required to pay the balance over to the Treasurer; but under the Consolidation Act, the Tax Collector, as we have already seen, was required to pay over the whole amount collected for taxes, without any deductions for commissions. It appears from a review of the Act, that it was intended that the Tax Collector should be charged only with the collection of delinquent taxes, and that he should receive for his compensation. the fees allowed by the revenue law for the seizure and sale of property, and his commissions on the State's funds collected by him, but should have no claim upon the city and county funds, for commissions for collecting the same.

Such was the position of the Tax Collector under the Consolidation Act in 1856. The Revenue Act of 1857 effected a material change in the duties as well as the compensation of the Tax Collector in the City and County of San Francisco. He was required to collect all the taxes assessed upon real and personal property, and was entitled to all the fees and commissions on the collection of taxes that the Sheriff would have received under section one hundred eleven of the Revenue Act of 1854, as amended in 1855, except so far as that section was modified or restrained by the Consolidation Act, and the Revenue Act of 1857. The revenue laws of the State at large, after the passage of the Act of 1857, subject to the modifications of the Consolidation Act, were in force in San Francisco at the time the taxes in this case were collected and paid over.

No question is made in respect to the right of the Tax Collector to all the fees that the Tax Collectors in other counties were entitled to, under the revenue laws in force in 1857, and it is conceded that the fees for seizure, advertisement and sale of property, and for the execution of certificates of sale and tax deeds, and any other fees of the like character, belonged to him, and were not required to be accounted for by him; nor is any doubt expressed by the respondents as to his being

entitled to the commissions specified in section one hundred
eleven, as amended by the Act of 1855, upon the portion of
the revenue collected for State purposes, and that is expressly
conceded to him.   But the issue is made upon his right to
commissions under that section, upon that portion of the reve-
nue collected for city and county purposes.

That section, at the time of the passage of the Act of the
17th of April, 1855, established the rates of commissions paya-
ble to the Tax Collectors throughout the State, except so far
as the same were modified or restrained by special enactments;
and in respect to the City and County of San Francisco, it
had not been expressly repealed at the time of the collection
of the taxes on which the commissions in this case are claimed.
Has the Act been repealed or modified by implication, in
whole or in part?

The ninety-sixth section of the general Revenue Act of 1854,
which permitted the Tax Collector to retain his commissions,
upon settlement and paying over to the Treasurer the balance
of the several funds in his hands, after deducting his commis-
sion, was expressly repealed by section fifty-five of the Reve-
nue Act of 1857, and that Act contains no provision similar in
substance or effect, nor does any subsequent Act that is appli-
cable to the City and County of San Francisco, that we have
been able to find; but the Act of 1857, section thirty-six,
provides that the Tax Collector, at the times therein stated,
shall "pay to the County Treasurer all money in his hands
belonging to or collected for the use of the State and county."
This law, the appellant has pursued, and his learned counsel
makes no question that it was the Tax Collector's duty to pay
to the Treasurer, all the money collected by him for State,
and city and county taxes.

The money having been rightfully and properly paid into
the City and County Treasury, the question is narrowed down
to the inquiry as to the right of the Tax Collector to demand
the repayment to him of commissions for the collection of the
city and county taxes, as a legal claim on the Treasury.   It
would seem from the Act of 1857, that the Legislature, while

taking from the Treasurer and committing to the Tax Collector, the collection of the taxes upon property, was at the same time studious to preserve unimpaired the several restrictions contained in the Consolidation Act, designed for the protection of the Treasury, and the limiting of the compensation to be paid to the officers of the city and county. It is provided in section fifty-six that nothing in that Act shall be construed "to remove or otherwise affect or impair any restriction now fixed by law, as to the compensation of any officer of said city or county, or otherwise in any mánner to authorize any expenditure or payment to be made out of the Treasury, or any public funds of said city or county, beyond what is now authorized by law, except for State purposes." The intention manifested by that provision is too plain to admit of doubt or question.

Officers charged by that Act with the performance of duties, for or on behalf of the State, were not forbidden, but by inference were permitted, to resort to the City and County Treasury for compensation for their services; but all the restrictions then existing calculated to limit the appropriations from the Treasury for services performed for the city and county, were preserved and continued in full force. It is argued with much earnestness, that as the Tax Collector performed great and important services in behalf of the city and county, that therefore it must have been intended by the Legislature, that he should receive all the commissions that the Tax Collectors in other counties were entitled to, under the same general law; and to make the argument more cogent and the presumption of the legislative intent the stronger, the argument proceeds on the theory that a denial of compensation for services rendered for the city and county, is a denial of any compensation whatever. This, as we have seen, is a misapprehension of the law, for he is evidently entitled to his commissions for collecting the State's portion of the revenue, and to his fees in proceedings to collect the delinquent taxes, which together might, in the opinion of the Legislature, amount to an ample compensation. If the position of the respondents is true, it will

be found that this is not altogether an exceptional case, for in some of the States, the officers who are paid by fees, receive nothing in criminal cases from the State or county. In most of the States the officers charged with the collection and disbursement of public funds, whose duty it is also to collect and disburse public school funds, receive but small, if any, fees or compensation for administering the school funds. The Consolidation Act presents several instances of the same policy. According to amendments of that Act passed in 1857, the Sheriff, County Clerk, Recorder, Surveyor, Justices of the Peace and Constables are entitled to no fees or compensation for services for which, under the general laws, they would have been authorized to charge the city and county, but in lieu thereof, a part of those officers receive a small salary.

The District Attorney receives a salary, but instead of his receiving the fees that the same officer is entitled to in other counties under the general law, those fees are paid into the Treasury as a special fund. The compensation of the Treasurer affords another instance. It is provided that he shall receive a salary of four thousand dollars, and such fees and commissions as are by law a State charge or allowable out of the State's funds. If the Legislature had reduced his salary to one dollar it could not have been said with propriety, that therefore it shall be presumed that it was intended that he should receive commissions on the city and county funds, for the Legislature may have deemed his fees and commissions, receivable out of the State's funds, an ample compensation for his services rendered for the city and county as well as the State. No reason can be assigned that will preclude the Legislature from restricting an officer in a particular county, to a given source of compensation, while those in other counties may resort to several sources, that will not apply with equal force, to prevent the Legislature from establishing different salaries and rates of fees and commissions in the several counties.

The third subdivision of section ninety-five of the Consolidation Act is cited by the appellant as conclusive of this

question, and clearly showing that the Tax Collector is entitled to the commissions in controversy. The language of the subdivision, as amended in 1857, is in some respects different from that in the original Act. It is as follows: "Third—Out of the General Fund, the fixed salaries or compensation of the Assessor and his deputies, the salaries fixed by law, of the Judge of the Superior Court, and other officers of said city and county, and of the officers of the Fire Department, and the legal fees of jurors and witnesses in criminal cases where the same by law are payable out of the County Treasury." Commissions are not directly mentioned, but perhaps they are included in the more comprehensive term "compensatjon." Neither this nor any of the subdivisions of that section, purport to establish the rates of fees, commissions or salaries of any of the officers; but the main object of this section is to declare out of what fund in the City and County Treasury, payment shall be made on account of the several classes of services and debts rendered for, or owing by the city and county. We must look elsewhere to find the rates of compensation for the services of the officers. In the case of the Tax Collector, the rate is found in section one hundred eleven, of the Act of 1854, as amended April 17th, 1855, subject to the limitations and restrictions of the Consolidation Act, all of which are saved, as before stated, by section fifty-six of the Revenue Act of 1857. It will be observed also, that it is provided by subdivision third, above quoted, that the salaries, fees and compensations are to be paid out of the General Fund, where the same are payable out of the County Treasury; and it is beyond all question that it was not the intention to provide that all the salaries, fees and commissions for county officers that were or might be fixed by general laws, should be satisfied from the Treasury *of the city and county* without regard to the restrictions of the Consolidation Act. That subdivision does not regulate, either generally or specially, the compensation to be paid, but when the amount of that compensation is ascertained, it directs from what fund it shall be paid.

We subject the Tax Collector to no rule that we do not equally apply to all the other city and county officers similarly situated.   Take the Recorder, as he stood under the amendments of the Consolidation Act in 1857.   He has been discharging the duties of his office for one year, and during that time he has performed a large amount of official business, both for private persons and for the city and county.   To ascertain the measure of his compensation he examines the general law (unless there was a special one applicable to San Francisco) fixing the Recorder's fees.   He claims and receives those fees from private persons ; and entertaining the view of the law that the Tax Collector does, he presents to the proper officers his account against the city and county for a large amount of services performed for the city and county at the same rate of fees that he charged private persons, and he is met with the objection that by the Consolidation Act he is entitled to a salary of fifty dollars instead of the fees claimed.   In other words, he is entitled to such compensation for his services rendered for the city and county, as the Legislature directs to be paid to him, and no more.

The appellant's construction of subdivision third of section ninety-five, if it could be maintained, would remove most of the restrictions of the Consolidation Act that were intended to limit the appropriations from the city and county funds, for services rendered for her by her officers, who under the general laws receive their compensation in fees and commissions.   The Consolidation Act was passed subsequently to the Act establishing the rates of the Tax Collector's commissions ; and by the provisions of the. Act requiring the taxes to be paid directly to the Treasurer, and allowing him only commissions as Treasurer, not those of the Tax Collector, the Act of 1855 regulating the Tax Collector's fees was suspended, so far as San Francisco was concerned—but perhaps it was not repealed.   Upon the passage of the Revenue Act of 1857, the collection of taxes was given to the Tax Collector, an office then existing under the city and county government, and acting

under certain restrictions precluding him from receiving payment from the Treasury for services performed for the city and county; and when the collection of taxes was committed to his hands, those restrictions were not expressly repealed, and it cannot be said that they were repealed by implication, because, as already remarked, the Legislature seemed to be careful to preserve all the restrictions and limitations of the Consolidation Act. It is declared in section eleven of said Act, that "no fees or compensation, other than as expressly allowed in this Act, shall be received by any officer of said city and county, or any district, nor shall any allowance be made to them or any of them beyond the fixed compensation aforesaid, under the name of office rent, fuel, lights, stationery, contingencies or otherwise." And the same prohibition, only in more comprehensive language, is found in the Act of 1857, section eleven, amendatory of that Act. This restriction was applicable to the Tax Collector, upon his entering upon the discharge of further duties, as clearly as to the Treasurer, who was relieved of the performance of duties theretofore incumbent upon him, or as to any officer of the city and county government.

We are of the opinion that the Act of the 17th of April, 1855, was not expressly repealed, but that it was modified and restricted in its operation, so as to accord with the provisions of the Consolidation Act, and that so far as it was in conflict with those provisions it was repealed by implication. And we are further of the opinion that the restrictions and limitations of the Consolidation Act, and the amendatory Act of 1857, were not repealed, either expressly or by implication, so far as the Tax Collector is concerned, by the Revenue Act of 1857.

We therefore hold that the appellant was not entitled to the commissions claimed in the accounts presented by him to the Board of Supervisors, and that the Board had not legal power or authority to approve or allow them.

The judgment is affirmed.

Opinion of the Court on Petition for Rehearing.

Mr. Justice SHAFTER, having been of counsel, did not sit on the trial of this case.

Mr. Justice SAWYER expressed no opinion.

By the Court, RHODES, J., on petition for rehearing.

We are satisfied of the correctness of the conclusions to which we have arrived in this cause, but in argument we used language more comprehensive than the necessities of the case required, or perhaps was justified by the statutes under consideration. We said that "All the officers charged with the maintenance of that government (the government of the City and County of San Francisco) were named in the Act; and the compensation to which each of them was entitled, whether by way of salaries, fees or commissions, was expressly mentioned—unless the Tax Collector formed an exception—and in case where the compensation was payable out of the City and County Treasury, the amount, or the maximum amount, was specially fixed in the Act." This does not comprehend such officers or employés as are suggested by counsel in his petition for rehearing—such as the officers of the Fire Department, officers and employés of the Hospital, City Attorney, Judge of the Superior Court, etc. We intended to include those officers who, under some name, are more particularly charged with the government of a city or a county, as Mayor, Aldermen, Supervisors, Clerk, Sheriff, Marshal, Treasurer, Assessor, etc., and to officers charged with functions of the character of those mentioned, as well as to some others named in the Consolidation Act, our remarks properly and correctly apply.

If the position of the learned counsel can be sustained, that "where the offices have existed before, the compensation is left to existing laws," it will be found that the grand purpose of the Consolidation Act, which is apparent without great familiarity with the Act, and with no acquaintance with its practical workings—that is, economy in the administration of the municipal government—will be defeated, and a large portion of the wholesome restrictions in the Act become nugatory.

We see no difficulty in maintaining that when the Tax Collector is required to collect the delinquent taxes, and in the discharge of that duty he is permitted by the revenue laws to collect from the delinquent, or from the purchaser at the tax sale, certain fees over and above the taxes, and is required to pay over to the Treasurer the taxes collected by him, there is left in his hands the fees he collected. And we find as little difficulty in understanding, that after the general revenue law has committed to the Tax Collector, the collection of all the taxes, and has allowed certain commissions on the collection both of State and city and county taxes, and the law has directed him to pay over all the taxes without any deduction for commissions, and has saved the restrictions of the Consolidation Act, one of which was that " no payment can be made from the Treasury, or out of the public funds of the county unless the same be specially authorized by this Act ;" that if the Consolidation Act has not " specially authorized " the payment to the Tax Collector of such commissions out of the funds of the city and county, the Board of Supervisors are not authorized to allow or audit a claim for such commissions, and the Tax Collector is not entitled to receive them ; and that if there is no restriction to prevent him from receiving the commissions on the funds collected for the State, he is entitled to have them allowed and paid.

It appears obvious that the appellant's construction of subdivision third, of section ninety-five, of the Consolidation Act, holding that it authorizes the payment of the commissions in controversy, cannot be maintained, for that subdivision merely specifies the General Fund, as the fund out of which fixed salaries or compensations shall be paid ; and if his construction could be maintained, it would result in the absurd conclusion, that the commissions for collecting the State tax, would be payable out of the General Fund of the city and county.

Rehearing denied.

Mr. Justice Sawyer expressed no opinion.