[L. A. No. 15991. In Bank.—December 19, 1940.]

MARY H. BRILL et al., Appellants, v. THE COUNTY OF LOS ANGELES (a Body Politic) et al., Defendants; CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

[L. A. No. 15992. In Bank.—December 19, 1940.]

EUGENE W. BRITT, Appellant, v. THE COUNTY OF LOS ANGELES (a Body Politic) et al., Defendants; CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

[L. A. No. 15993. In Bank.—December 19, 1940.]

DANIEL M. HUNSAKER, Appellant, v. THE COUNTY OF LOS ANGELES (a Body Politic) et al., Defendants; CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

[L. A. No. 15994. In Bank.—December 19, 1940.]

MARY H. BRILL, Appellant, v. THE COUNTY OF LOS ANGELES (a Body Politic) et al., Defendants; CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

[L. A. No. 15995. In Bank—December 19, 1940.]

ROSE H. STEEHLER, Appellant, v. COUNTY OF LOS ANGELES (a Body Politic) et al., Defendants; CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

Daniel M. Hunsaker, Lloyd E. Keiser and Don M. Kitzmiller for Appellants.

Pillsbury, Madison & Sutro, Alfred Sutro, Francis N. Marshall, Holbrook & Tarr and W. Sumner Holbrook, Jr., as *Amici Curiae,* on Behalf of Appellants.

Ray L. Chesebro, City Attorney, Leon T. David, Assistant City Attorney, John W. Holmes and Henry C. Ramsey, Deputies City Attorney, Everett W. Mattoon and J. H. O'Connor, County Counsel, S. V. O. Prichard, Assistant County Counsel, A. Curtis Smith, Deputy County Counsel, Percy A. Heckendorf, District Attorney (Santa Barbara), James B. Abbey, District Attorney (San Diego), and Carroll H. Smith, Deputy District Attorney, for Respondents.

CARTER, J.—These several causes for the recovery of taxes based on alleged excessive assessments for the year 1932 have been consolidated and are before us on appeals from judgments on the pleadings in favor of the defendant city.

In each cause the tax sought to be recovered had been assessed and collected by the defendant county for and on behalf of the defendant city. So far as pertinent here, section 6 of article XI of the Constitution provides that "Cities and towns . . . may, by charter provision or amendment, provide for the performance by county officers of certain of their municipal functions." Accordingly, the charter of the defendant city, adopted in 1925, provided in section 2 thereof that the city "shall have the right and power, subject to the restrictions in this charter contained . . . to transfer or consolidate functions of the city government to or with appropriate functions of the state or county government . . . " The transfer by the city to the county of the taxing function was contained in section 342 of the charter which, in part, declared that "Until otherwise provided by ordinance, the city shall continue to use, for purposes of municipal taxation, the county system of assessment and tax collection . . . " The city has never "otherwise provided by ordinance" but, on the contrary, and in furtherance of its transfer of the taxing function to the county, has provided by ordinance that "Any taxes, together with any penalties thereon heretofore or hereafter paid for the use of or on behalf of the City of Los Angeles may be refunded by the County Auditor in all cases where a refund of county taxes and penalties thereon is provided for under the provisions of Part III, Title IX of the Political Code of the State of California." (Ordinance 40302, adopted May 13, 1920, as amended by Ordinance 45027, approved November 14, 1922). Sections 3804 and 3819 of the Political Code, which pre-

scribe distinct and under certain circumstances cumulative methods or remedies for the refund and recovery of taxes (*Stewart Law & Collect. Co.* v. *County of Alameda,* 142 Cal. 660 [76 Pac. 481]), are found in the title and part of the Political Code designated in the ordinance.

In view of the above-mentioned transfer or consolidation of the taxing function, the respective plaintiffs in the several causes now before us, paid the city taxes here sought to be recovered to the county tax collector. Conformably with the provisions of section 3819, *supra,* the payments were made under written protest and these consolidated actions to recover the same were respectively commenced within six months thereafter. In order to preclude any uncertainty in the matter, it is well to here state that inasmuch as the alleged illegality in the taxes sought to be recovered arose out of asserted excessive assessments, the several taxpayers prior to suit unsuccessfully had taken the required preliminary precaution of challenging the same before the board of supervisors sitting as a board of equalization.

As stated, these several actions were commenced under section 3819, *supra.* No claim or demand for payment (other than the objection before the board of equalization and the written protest at the time of payment) was filed by any of the plaintiffs prior to suit, undoubtedly, because section 3819, which authorizes an action to recover a tax based on an excessive assessment, contains no requirement for the filing of a claim prior to suit. After answer filed, the defendant city moved for and procured judgment on the pleadings in each cause on the ground that section 376 of its charter required the filing and rejection of a demand for payment as a prerequisite to suit ''on any claim for money or damages.'' These consolidated appeals followed. While the several causes are at issue as to the defendant county, the trials thereof are awaiting disposition of these appeals in order to avoid the possibility of duplicate trials.

In support of the judgments in its favor, the city urges, among other things, that while the provisions of section 342 of the charter and the above-mentioned ordinance have generally adopted and committed it to the system of county taxation and refund, nevertheless, under the provisions of section 2 of the charter, *supra,* its ''right and power . . . to transfer or consolidate functions of the city government to or with appropriate functions of the . . . county govern-

ment'' was at all times "subject to the restrictions in this charter contained.'' Hence, it is argued that the transfer or consolidation of the taxing function, which necessarily includes the refund procedure (*Hellman* v. *City of Los Angeles*, 147 Cal. 653, 655 [82 Pac. 313] ; *Keyes* v. *San Francisco*, 177 Cal. 313, 323 [173 Pac. 475]), was limited by and subject to the restriction contained in section 376 of the charter as to the necessity of filing a claim with the city prior to suit for refund. This argument entirely disregards the further and definitely more pertinent provision of section 2 of the charter to the effect that "in case of any such transfer or consolidation, the provisions of this charter providing for the function of the city government so transferred or consolidated shall be deemed suspended during the continuation of such transfer or consolidation, to the extent that such suspension is made necessary or convenient by said transfer or consolidation and is set forth in the ordinance establishing such transfer or consolidation . . . '' The only practical construction of this provision appropriate to our inquiry is the one that suggests the conclusion that any requirement such as is contained in section 376 of the charter for the filing of a claim with the city prior to suit, which might have application were the city itself assessing, collecting and refunding its taxes, is "suspended" during the continuation of the transfer or consolidation of these functions to the extent that such "suspension" is necessary or convenient and is set forth by ordinance. Here, as already shown, the city by ordinance, *supra*, had authorized refunds of city taxes where refunds of county taxes would be appropriate under the provisions of Part III, Title IX of the Political Code wherein, as stated above, are found sections 3804 and 3819, the latter of which contained no requirement for the filing of a claim prior to suit and whose provisions as to written protest and commencement of action within six months after payment of the challenged tax were strictly followed by the plaintiffs herein. In our opinion, as to tax refunds the foregoing definitely indicates a suspension by the city of the claim provision of section 376 of the charter during the continuation of the transfer and consolidation of the taxing and incidental refund function, even if we assume, a point not necessary to here decide, that such general claim provision would be applicable to tax refunds if the city itself were directly exercising such function. More-

over, section 376 appears in that part of the charter entitled "Disbursements and Liabilities" and containing sections 360–376, inclusive. Examination of those several charter sections discloses that they contain many requirements obviously bearing no relation to the refund of taxes assessed and collected by the county for the city, again assuming that they would otherwise apply. In this connection see *Birch* v. *County of Orange*, 186 Cal. 736, 742 [200 Pac. 647], wherein it was held that the general claims provisions of sections 4075 et seq. of the Political Code (analogous to sections 360–376 of the charter) contained and prescribed requirements peculiar to the handling of general claims against a county and were therefore inapplicable to the refund of county taxes. We shall have more to say about the Birch case at a later point in this opinion.

In support of its contention that the filing of a claim with it prior to suit was indispensable, the city places great reliance on the case of *Farmers etc. Bank* v. *City of Los Angeles*, 151 Cal. 655 [91 Pac. 795]. That case is factually distinguishable from the present one and does not require a conclusion herein that the filing of a claim with the city was an indispensable prerequisite to the commencement of these actions. There, as distinguished from the present case, the city itself had directly provided a complete scheme for the assessment and collection (which, as shown, includes refund) of taxes by *city officers* though, pursuant to charter provision, such scheme was to be "substantially" the same "as the mode and manner" for the collection of state and county taxes. Though patterned after the county plan, the city had there set up its *own* complete taxing system and four of the Justices thereupon concluded that under such circumstances the refunding procedure of such city system was subject to and controlled by the charter provision as to the necessity for filing a claim prior to suit to recover money. In so concluding, the majority opinion declared that under the circumstances there prevailing it was "doubtful whether section 3819 of the Political Code, relating to the recovery by suit of taxes paid under protest, is applicable to the city of Los Angeles". True, the decision went on to assume applicability of the section and stated that if applicable it would have to be construed "subject to the provisions of the charter as to claims and demands against the city". This latter holding was unneces-

sary to the determination of the case then before the court and was dissented to by three of the Justices. The cited case has been frequently distinguished. (*Keyes* v. *San Francisco,* 177 Cal. 313, 318, 322 [173 Pac. 475]; *Birch* v. *County of Orange,* 186 Cal. 736, 743 [200 Pac. 647].) Moreover, it was decided prior to the adoption of the present city charter and before the city contracted with the county for the latter to collect its taxes. Here, as already stated, we have not a situation where, as in the cited case, the city itself has directly established its taxing system, though patterned after another, but, rather, a situation where it has *adopted* such other system and has transferred or consolidated its function to or with the county function. Under such circumstances, and by reason of the charter (secs. 2 and 342) and ordinance provisions, *supra,* it must be held to have adopted the refund procedure of the county taxing system unimpaired by the general claim provision of its charter.

■ Additional support for this conclusion is found in the established principle of statutory construction to the effect that a special statute dealing expressly with a particular subject controls and takes priority over a general statute. Where a statute provides a special remedy for use in specified cases, a party seeking the remedy is entitled to look to the special statute for a definition of his rights, and a condition not named in the statute need not be satisfied. Section 3819, under which these actions were brought, deals expressly and specifically with the refund and recovery of taxes paid under an asserted excessive assessment. The remedy there afforded is conditioned solely and only upon payment of the tax under written protest and commencement of action within six months thereafter. No requirement is therein contained for the filing of a claim prior to suit and the city having adopted the provisions of this special statute should not, under all the circumstances here present, be permitted to alter or enlarge them by interpolating therein the requirement of its charter provision having to do with claims generally. If a taxpayer, after paying his taxes, must prepare and file a claim and wait for it to be considered and rejected before he can sue, obviously he is not accorded the full right given by section 3819 of bringing suit at any time within six months after payment.

The principle now under discussion was given application in *Birch* v. *County of Orange, supra,* where, as already indicated, in an action brought under section 3819 to recover county taxes based on an alleged excessive assessment. and paid under written protest, without prior claim, it was held that section 4075 of the same code, providing generally for the presentation of claims and demands to boards of supervisors, was without application. Among other things, it was there declared that "Section 3819, providing for the recovery of taxes paid under protest, under which this action is brought, makes no reference, directly or indirectly, to any demand upon the board of supervisors, but provides that after the disputed taxes have become payable, and are paid under written protest, the protesting taxpayer may at any time within six months after such payment bring his action against the county.

"If he must first present his claim to the board of supervisors, it is plain that he is precluded from bringing suit at 'any time' after payment, and that he could not have the full six months after such payment in which to commence his action.

"It was held in *Clear Lake W. W. Co.* v. *Lake Co.,* 45 Cal. 90, under a special statute for recovering damages from a county for property destroyed by a mob, that the limitation of the time to bring action to six months negatived any presumption that the legislature meant to require the claim to be presented to the board of supervisors before suit was begun. . . .

"In *Western Ranches* v. *Custer County,* 89 Fed. 577, it was held, under an enactment in Montana similar to section 3819 of our code, that the statute provided a special remedy as to taxes paid under protest and that a condition to bringing suit, not named in the statute, was not required, and that, therefore, the claim did not require presentment before suit."

In supplemental briefs filed pursuant to this court's suggestion, it is urged that as a result of an amendment to section 4075 in 1931 the county procedure now contemplates in all instances that a claim be filed as a condition precedent to the maintenance of a suit against a county, including suits under section 3819 for the refund of taxes whether collected for the county or on behalf of a municipality. In other words, it is contended that by reason of such amendment of section

4075 (the general claims provision applicable to counties) the earlier decision in the Birch case has lost much· of its virility. Without attempting to here state the many and divergent arguments advanced upon this proposition, we are satisfied after a thorough consideration of the problem that the 1931 amendment of section 4075 may not be given the effect contended therefor. Examination of the cases decided prior to 1931 discloses that everything contained in the 1931 amendment, so far as is here pertinent, was the law at the time the Birch case was decided and that, in effect, the 1931 amendment merely served to place in the statute expressly what had theretofore existed by reason of judicial interpretation. Thus, long before 1931 it was held quite uniformly that under section 4075 as it then read, and under other similar statutes, the filing of a claim was a condition precedent to bringing suit on all claims, unless by virtue of some special statute, such as section 3819, the general section did not apply. (*McCann* v. *Sierra County,* 7 Cal. 121; *People* v. *Supervisors,* 28 Cal. 429, 430; *Alden* v. *County of Alameda,* 43 Cal. 270; *Rhoda* v. *Alameda County,* 52 Cal. 350; *Arbios* v. *County of San Bernardino,* 110 Cal. 553 [42 Pac. 1080]; *City of Los Angeles* v. *Los Angeles County,* 9 Cal. (2d) 624, 628 [72 Pac. (2d) 138, 113 A. L. R. 370] (sec. 4075, *supra,* before the 1931 amendment). We cannot, therefore, accede to the proposition that the 1931 amendment of section 4075 abrogated the rule of the Birch case. As matter of fact, as we shall presently show, the reasons which led to the decision in the Birch case are equally compelling since the 1931 amendment of section 4075.

As stated earlier in this opinion, the legislature (prior to a 1939 amendment hereinafter discussed) had provided two distinct and cumulative methods or remedies for the refund and recovery of taxes. One of these (sec. 3804, Pol. Code) has been frequently referred to as an administrative remedy by which, *after the filing of a verified claim,* the appropriate authorities may, without court sanction, direct and pay a refund of taxes. The second distinct and cumulative remedy was that provided by section 3819 of the same code (under which these actions were brought) and may be referred to as the judicial or court remedy. Under the latter remedy it was only necessary to pay the tax *under protest* and sue within *six months* to recover the same. No claim was required to be

filed and under the established principles mentioned earlier in this opinion this special statute must be held to prevail over a general claims statute such as section 4075. Particularly, when it is noted that the tax collection and refund provisions appeared in Part III, Title IX of the Political Code entitled ''Revenue'' which presented a complete scheme of property tax administration, covering every detail of assessment, equalization, levy, collection and remedies both of the taxpayer and the taxing body—while section 4075 appears in Part 4, Title 2, having to do with claims generally against a county and makes no express mention of tax claims elsewhere completely covered. Moreover, much of the language of sections 4074–4076, inclusive, is inappropriate and inapplicable to tax claims.

Recurring to our statement that the reasons underlying the Birch decision are as potent since the 1931 amendment of section 4075, we need only briefly set them forth as follows: (1) The taxation procedure (collection and refund) set out elsewhere than in section 4075 completely and adequately covered the subject, including the filing of a claim when appropriate (sec. 3804); (2) the provisions of section 4075 as to itemization, etc., of claims are not particulars which would seem to relate to tax claims; (3) if the taxpayer, proceeding under section 3819 (which required no claim), must file a claim under section 4075 and await action thereon, he is denied the full right given him by section 3819 of suing *at any time within six months after payment;* (4) the filing of a claim is an idle act when the assessment already has been challenged before the board of supervisors sitting as a board of equalization and the tax has been paid under protest—these steps adequately serving the only purpose of a claim, viz., to notify the governmental entity of the challenge to the tax; and (5) the fact that the remedy provided by section 3804 expressly required a prior claim, while section 3819 contained no such requirement, is indicative of a legislative intent to afford a distinct and cumulative remedy for the recovery of a tax without filing a prior claim therefor—the only essentials being payment under protest and suit within six months thereafter. As stated, these five reasons or grounds advanced in the Birch decision in 1921 are equally persuasive today and together with the fact that section 3819 is special in character and should therefore under settled

principles govern a general statute such as section 4075, point indisputably to the conclusion that the latter section is without application to these several causes.

■ This conclusion finds further support in the fact that section 3819 was amended in 1937, subsequent to both the Birch decision and the amendment of section 4075, but no attempt was then made to bring it into line with or to subordinate it to the latter section. Moreover, in 1939 the legislature repealed the two special statutes (secs. 3804 and 3819) having to do with the recovery of taxes and included their counterparts in the new Revenue and Taxation Code (Stats. 1939, p. 1274, secs. 5096–5102 and 5136–5140) again *without any requirement for a claim prior to suit* in the counterpart of the former section 3819. This is strongly indicative of a legislative intention that in cases of this character the *special* remedy for the recovery of taxes is to be free of any requirement contained in section 4075 for the prior filing of a claim. Any other conclusion would deprive the taxpayer of his right to rely exclusively on the provisions of the statute affording him his remedy and would necessitate a search of all other statutes and codes for possible pitfalls with respect to such remedy.

In our disposition of these causes we have examined the many briefs of the parties and those of *amici curiae*. While we may not have specifically referred herein to all of the arguments advanced, we have carefully considered them and are satisfied that what we have said adequately disposes of the causes.

The judgments are and each of them is reversed with directions to the trial court to proceed with the trials of the several causes.

Edmonds, J., Peters, J., *pro tem.*, and Pullen, J., *pro tem.*, concurred.

CURTIS, J., Dissenting.—I dissent.

The county tax refund procedure, as mentioned in the majority opinion, was prescribed by the general law at the time these actions were commenced and provided two distinct, and in certain instances cumulative, remedies for the refund and recovery of taxes, sections 3804 and 3819 of the Political Code. With the remedy afforded by section 3804,

which in express terms calls for the filing of a verified claim, we are not here concerned. Plaintiffs elected to seek relief in the manner specified in section 3819, paying the tax under protest and thereafter filing the present actions for its recovery. Concededly they filed no claim or demand for refund with either the city council or the board of supervisors. Although this procedure satisfied the express demands stated in section 3819, it failed to take note of the further requirement found in section 4075 of the Political Code for presentation of a claim to the board of supervisors before the bringing of any action thereon. The question, therefore, is whether compliance with the claim requirement of section 4075 is a condition precedent to maintenance of an action for tax refund grounded upon section 3819.

In the case of *Birch* v. *County of Orange*, 186 Cal. 736 [200 Pac. 647], decided in 1921, it was contended by the county, but without success, that under the general county system no suit for refund based upon section 3819 could be maintained unless a claim had been filed. The county relied upon section 4075 of the Political Code as then in force, but at that time said section did not require the filing of a claim with the board of supervisors as a prerequisite to institution of an action against the county. In 1931, however, which was after the decision in the Birch case and prior to the filing of the present actions, section 4075 was amended in such a manner as to expressly provide that all claims against the county must be filed with the board of supervisors before suit may be instituted thereon. The Birch case was properly decided under the law as it then stood, but it cannot control the decisions in the present actions, which were commenced subsequent to the change in the statute.

There is no escape from the conclusion that at all times since the amendment of section 4075 the filing of a claim has been a prerequisite to maintenance of an action under section 3819. This pronouncement could be supported by tracing the history and effect of claims statutes in force in this state, and by reviewing the numerous cases construing such statutes. See, for example, *McCann* v. *Sierra County*, 7 Cal. 121; *People* v. *Supervisors*, 28 Cal. 429, 430; *Alden* v. *County of Alameda*, 43 Cal. 270; *Rhoda* v. *Alameda County*, 52 Cal. 350; *Arbios* v. *County of San Bernardino*, 110 Cal. 553 [42 Pac. 1080]; *Bancroft* v. *City of San Diego*, 120 Cal.

432 [52 Pac. 712] ; *Farmers etc. Bank* v. *City of Los Angeles, supra; Keyes* v. *San Francisco,* 177 Cal. 313 [173 Pac. 475] ; *Western Salt Co.* v. *City of San Diego,* 181 Cal. 696 [186 Pac. 345] ; *Birch* v. *County of Orange, supra; City of Los Angeles* v. *County of Los Angeles,* 9 Cal. (2d) 624 [72 Pac. (2d) 138, 113 A. L. R. 370] ; 7 Cal. Jur., p. 549; *Thiel D. Co.* v. *Tuolumne County,* 37 Cal. App. 423 [173 Pac. 1120] ; *Rhoda* v. *County of Alameda,* 134 Cal. App. 726 [26 Pac. (2d) 691] ; *Johnson* v. *City of Glendale,* 12 Cal. App. (2d) 389 [55 Pac. (2d) 580].

A digest of these authorities would serve no purpose but to add to the length of this dissent. My conclusion herein as to the effect of the amendment to section 4075 may be based upon what I regard as the clear and unambiguous meaning of the wording thereof. Regardless of the proper construction and application of the statute prior to this amendment, or the extent to which the amendment may have been intended to alter the former rule, its plain language admits of but one interpretation, and that is that the filing of a claim is a condition precedent to maintenance of suit thereon.

As stated in the amendment, which comprises a separate paragraph appended to the former section: ''All claims against any county or against any public officer in his official capacity payable out of any public fund under the control of the board of supervisors, whether such claim be founded upon contract, express or implied, or upon any act or omission of the county or any officer or employee thereof, or of any district or public entity the funds of which are controlled by the board of supervisors, or of any officer or employee of any such district or public entity, shall be presented to the board of supervisors as herein provided before any suit may be brought on any such claim, and no suit shall be brought on any such claim until said claim has been presented as herein provided and rejected in whole or in part. In presenting any claim not founded upon contract full details as to the nature of the claim . . . shall be stated . . . and in all other respects such claims shall be presented and acted upon in the same manner as claims founded upon contracts.''

The statute expressly provides in clear and unambiguous terms that ''no suit shall be brought on any such claim [that

is, a claim against the county] until said claim has been presented as herein provided". A court could not, under the guise of judicial construction, limit such language by holding that certain classes of suits might be filed without the prior filing of a claim, even though that might appear from a judicial viewpoint to be the more reasonable mode of procedure. It would be difficult to conceive how the legislature could possibly have made a broader provision with reference to the necessity of filing a claim prior to the institution of any action against the county.

The argument that section 3819 is a special statute dealing only with the recovery of taxes illegally paid while section 4075 is a general statute applying generally to claims against the county, and therefore the special statute prevails over the general statute, is effectively answered by the decision of this court in the case of *Farmers etc. Bank* v. *City of Los Angeles, supra*. In that case it appears that the city by its charter provided that the mode and manner of collecting municipal taxes and enforcing tax liens should be substantially the same as that prescribed by law for the collection of state and county taxes. In rendering its opinion this court assumed that section 3819 was applicable to the City of Los Angeles. Section 4075 did not then require the presentation of a claim to the board of supervisors as a prerequisite to the institution of an action on such claim. But the charter of the city did provide that all claims and demands against the city, except for principal and interest on bonds, should be presented to the city council, and that no suit should be brought upon any such claim until it had been presented "as herein provided and rejected in whole or in part".

This court held that in an action to recover taxes paid under protest under the provisions of section 3819, a complaint that failed to state that a claim had been presented to the city council as provided by the charter of said city did not state facts sufficient to constitute a cause of action, and affirmed the judgment of the trial court holding the complaint fatally deficient for that reason. That case, in respect to the applicability of the law requiring presentation of a claim before suit, is the exact counterpart of the present action. There it was held that the general provisions of the charter, requiring all demands to be presented to the city council before suit, applied to actions brought under section 3819 of

the Political Code for the recovery of taxes paid under protest. This is the precise question we have before us in the present action. The decision in that case has never been overruled directly or by implication. It has stood for over thirty years, and must now be regarded as the settled law of this state.

The reason for requiring the presentation of a claim before suit has been well stated by this court in the following language: "While it is true, so far as we have discovered, that the question has never been discussed in connection with a claim for the recovery of taxes paid under protest, we can perceive no material difference between such a claim and claims of the character considered in some of the decisions above cited. Such claims are often settled and paid when presented, and the presumption is that they always will be so paid if they are just. The policy of the law applies as well to them as to other demands against a city, and the reasons for the rule when applied to such a claim are as cogent as when applied to any other claim. We find in the law no method by which the city can voluntarily refund taxes illegally collected, without the presentation of a claim therefor, and if these provisions of the charter are not applicable, it would follow that the city must in every case be subjected to the costs of a suit even though the proper officers consider the claim a just and legal one, and are willing to pay the same." (*Farmers etc. Bank* v. *City of Los Angeles, supra,* p. 658.)

I find nothing decided in the Birch case which is inconsistent with this rule when applied to actions brought under section 3819 of the Political Code. There may be certain language in said decision which would give that impression, but a reading of the entire opinion shows conclusively that such is not the case. On the other hand, in the Birch case, the court held that Birch was not required to present his claim to the board of supervisors of the county for the reason that there was no statute or section of the code making the presentation of such a claim a prerequisite to bringing suit thereon. This is apparent from the following statement appearing on page 743 of the opinion in that case: "*Farmers' and Merchants' Bank* v. *Los Angeles,* 151 Cal. 655 [91 Pac. 795], cited by respondent, was an action brought to recover taxes paid to the city of Los Angeles under protest, and it was there held that the claim should have been presented to the city council

before suit was commenced. But that decision was in pursuance of an express provision of the Los Angeles charter that 'No suit shall be brought for any claim for money or damages against the City of Los Angeles . . . until a demand has been presented as herein provided and rejected in whole or in part . . . ' That action was not brought directly under the state law, but under a similar ordinance of the city of Los Angeles which, of course, was subject to the limitations of the city charter. Under earlier decisions in this state the same rule was applied in suits against a county but these decisions were under a statute which expressly required such presentation to be made to the board of supervisors in all cases before action could be maintained. (*McCann* v. *Sierra County*, 7 Cal. 121; *Alden* v. *Alameda County*, 43 Cal. 270, 272; *Rhoda* v. *Alameda County*, 52 Cal. 350; *Keyes* v. *San Francisco*, 177 Cal. 313, 319 [173 Pac. 475].) We have no such sweeping requirement at the present time which would hold against a reasonable implication under a special statute to the contrary."

The court in speaking of the "sweeping requirement" must have referred to the provision of the city charter of the City of Los Angeles providing for the presentation of claims to the city council before suit may be brought and making such prior presentment a prerequisite to the institution of an action on such claim. As we have indicated above, section 4075 as amended in 1931 of the Political Code is just as "sweeping" in its requirement as was the section of the City Charter of Los Angeles considered in the Farmers' and Merchants' Bank case and it was because said section before its amendment contained no such requirement that the court held that Birch could recover without a prior presentation of his claim. That such was the case clearly appears from the following statement in the opinion in the Birch case, at page 742: "Section 4075 does not purport to declare what claims shall be presented to the board of supervisors as a prerequisite to bringing suit, but prescribes the manner in which certain claims shall be itemized and presented before the board may pass upon them." That statement was true of said section as then in force, but not after its amendment, as it now expressly declares that, "All claims against any county . . . shall be presented to the board of supervisors . . . and no suit shall be brought on any such claim until said claim has been pre-

sented as herein provided." Can it be said with any reason that had this "sweeping requirement" of section 4075 been a part of said section 4075 at the time the Birch case was brought, the decision of the court would not have been different? I think it clearly appears from the facts of that case and the language of the opinion that it would not have been so.

The requirement that claims against the state, a county, or other political division of the state, be filed with the governing body or board charged with the responsibility of paying said claim has become almost the universal practice in this state. Practically all of the city and county charters which have come to the attention of this court contain a section making the filing of a claim a prerequisite to the bringing of an action thereon. Claims against the state must be presented to the State Board of Control before any suit may be brought thereon against the state. (Secs. 667, 688, Pol. Code.) The Retail Sales Tax Act requires a taxpayer to file a claim with the State Board of Equalization as a condition precedent to maintaining a suit to recover sales taxes erroneously collected under said act, notwithstanding the Board of Equalization may have previously heard and determined the taxpayer's petition for reassessment. (Secs. 20, 23 and 31, Retail Sales Tax Act, Stats. 1933, p. 2599, as amended.) Like provisions are contained in the Use Tax Act. (Secs. 12, 17 and 25, Stats. 1935, p. 1297, as amended.) The Personal Income Tax Act (Stats. 1935, p. 1090, as amended), section 20 requires the filing of a claim for any refund of taxes paid under said act before the same may be paid, and a similar provision is to be found in section 27 of the Bank and Corporation Franchise Tax Act. (Stats. 1929, p. 19, as amended.)

It is true that under certain statutes like, for instance, section 3669a of the Political Code, a person claiming that an assessment of the Board of Equalization is void in whole or in part may pay the state treasurer the taxes assessed against him by the board by reason of said assessment, under protest, and may thereafter sue the treasurer for the amount claimed to be illegally assessed against him without filing any claim therefor with the state treasurer. Apparently it was so provided for the reason that in such cases the verified protest is made to the very officer against whom the suit to recover the

protested payment may be instituted and for that reason he is thereby fully informed as to the nature of the taxpayer's claim. But when the taxpayer brings his suit against the state on this same claim he is precluded from recovery unless, before bringing suit, he files with the State Board of Control his claim under the general section of the code (sec. 688, Pol. Code), which section requires that all claims against the state must be presented to the Board of Control before suit may be brought thereon. (*Bekins Van & Storage Co.* v. *State of California,* 135 Cal. App. 738, 741 [28 Pac. (2d) 61].)

Plaintiffs argue in the present cases that there is no necessity of filing a claim with the board of supervisors after they had filed their written protest with the county tax collector. The same argument could well have been made and probably was made in the Bekins case, and it was answered by the court by pointing out the statute, section 688 of the Political Code, which made it necessary. The difference between the Birch case and the Bekins case is that the court in the former case was of the opinion that the filing of such a claim with the board of supervisors may have been of doubtful value and as there was no provision of law requiring such filing, held that it was not necessary. In the Bekins case, however, the court held that where there was a statute which expressly provided for the filing of a claim before suit, the filing thereof was necessary. The case before us differs from the Birch case as I have heretofore attempted to show, but is precisely like the Bekins case in that section 4075 of the Political Code, like said section 688 of the same code, made the filing of the claim a prerequisite before suit brought. I think it is obvious from the statutes to which I have called attention that it is the general policy of the state to require as a prerequisite to the institution of an action, the presentation of a verified claim to the proper board, charged with the payment thereof.

The majority opinion cites a large number of cases decided by the appellate courts of this state holding that when an action is brought under section 3819 of the Political Code, or a statute similar thereto, it is not a prerequisite that a claim be filed with the board of supervisors or other governing body before suit may be brought on such claim. Practically all of the cases like the Birch case were decided prior to the amendment of section 4075 of the Political Code in 1931, and for that reason are not applicable to the instant

action. I think there is no occasion to give any more detailed consideration to these cases and show their inapplicability to any issue before us. A mere reading of them will disclose that fact.

As the complaint in each of these cases failed to state the prior presentation of a claim before action brought, it did not state facts sufficient to constitute a cause of action against either the said county, or the defendant, the City of Los Angeles. The judgment of the trial court in each action should be affirmed.

Gibson, C. J., and Shenk, J., concurred.

Rehearing denied. Gibson, C. J., Shenk, J., and Curtis, J., voted for a rehearing.