STATE OF CONNECTICUT *v.* CITY OF BRISTOL

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued November 6, 1952—reargued January 8—decided February 10, 1953

*Ernest H. Halstedt,* assistant attorney general, with whom, on the brief was *George C. Conway,* attorney general, for the plaintiff.

*Thomas J. O'Donnell,* for the defendant.

BROWN, C. J. This is an action for a declaratory judgment as to the duty of a town to pay for the care of a pauper patient in a state humane institution. The case comes to this court by reservation from the Superior Court and calls for the interpretation of the applicable sections of the General Statutes.

These facts from the stipulation for reservation as amended suffice to present the questions to be answered: William Blum, who was then an indigent person, was admitted to the Connecticut State Hospital on February 21, 1946, on an emergency certificate signed by a physician, and subsequently, upon application of the state commissioner of welfare, on March 18, 1946, was formally committed by order of

the Probate Court, all pursuant to § 1732, as amended, of the General Statutes, Rev. 1930 (Rev. 1949, § 2649). Long prior to his original commitment he had, and has had ever since, a settlement in Bristol. From the time of his commitment he has had no estate, and his wife has been his only legally liable relative. She paid for his care through August 29, 1947, but shortly thereafter became unable to make any further payments and left the state. From December 1, 1947, to date, Blum has been a pauper. On November 8, 1949, the state formally notified Bristol of the situation and requested it to assume the account from the date of August 29, 1947. The city refused to make payment for the period from August 29, 1947, through November 8, 1949, on the ground that it is liable only from the date of formal notification to it of Blum's pauper status. The two questions reserved are: (1) Is a town liable at the statutory rate for the care of a pauper patient in a state humane institution from the time of the initial existence of such status? (2) Is a town liable at the statutory rate for the care of a pauper patient in a state humane institution only from the date of formal notification to the town by the state that the patient has a pauper status?

A town is under no common-law obligation for the support of paupers. Its sole liability in this respect is imposed by statute, and it is not liable for a pauper's support any farther than statute makes it so. *Beacon Falls* v. *Seymour,* 44 Conn. 210, 214. In this case, the plaintiff relies for recovery upon §§ 2649 and 2650 of the General Statutes. The former statute provides that one who has suddenly become in need of treatment in a hospital for mental illness may be confined in such a hospital temporarily on a physician's certificate as specified, and that the com-

missioner of welfare may then institute proceedings in the Probate Court for the commitment of such person. It goes on to provide that, in case of commitment on the application of the commissioner, "he shall collect from the town in which such person has a settlement, or from such person or persons as may be liable for his support, the amount expended for such commitment and for the support and benefit of such person in the manner provided in sections 2650, 2661 and 2663." Upon the facts stipulated, neither § 2661 nor § 2663 is applicable to affect the determination of either of the questions reserved. Section 2650 is entitled "Commitment of mentally ill paupers. Support." Its pertinent provisions are: "When a pauper in any town shall be alleged to be mentally ill, a selectman of such town shall apply to the court of probate . . . for his commitment to a state hospital for mental illness, and such court [upon finding the allegation true] may order him [committed for] as long as may be requisite. Three dollars a week of the expense of his support . . . shall be paid by the town wherein he has a legal settlement." The defendant denies any liability under §§ 2649 and 2650. It concedes that it has an obligation under § 2585 to pay for the period subsequent to its notification on November 8, 1949. Section 2585 imposes a duty upon each town to support its own paupers. That duty is subject to a limitation contained in § 2594, which specifies that "no individual shall have any claim against a town for supplies or assistance furnished to a pauper . . . before he has given notice of the condition of such pauper to one of the selectmen of the town where the pauper resides." The conflicting claims of the parties present the vital question whether, under a proper construction of the statutes, notice was essential to the liabil-

ity of the defendant for the period from August 29, 1947, to November 8, 1949.

It is evident that § 2650, by imposing liability upon a pauper's town of legal settlement for his support in a state mental hospital when he has been committed upon the application of a selectman of the town, provides an apparent exception to the general rule, prescribed in § 2594, which makes notice to the town a prerequisite to its liability for supplies or assistance furnished to a pauper by any individual. Two possible reasons for creating this exception suggest themselves. The first is that, since the commitment under § 2650 upon a selectman's application implicitly involves knowledge by the town of the situation as of that time, there is no need for notice. The second is that, since any claim for reimbursement under § 2650 is restricted to one made by the state against a town as one of the state's municipal subdivisions, authentic official records of the circumstances substantiating the claim are presumably available, a situation which ordinarily would not exist in the case of a claim for reimbursement by an individual. It is our conclusion that § 2650 does create an exception and that § 2594 does not apply to a case falling within § 2650.

In construing the effect of the language in § 2649 referring to the commissioner's right to collect, "in the manner provided in [section] 2650," from the town of settlement for the hospital support of a person committed, the dual nature of the provisions of § 2650 is of vital importance. As appears from both its title and its context, it relates to two essentially different propositions. The first concerns the "Commitment of mentally ill paupers," and the second, "Support." While the latter provision charges the town of settlement of a pauper committed under the

former provision with the payment of $3 a week for his hospital support, the language imposing this duty to pay is not restricted to the case of one so committed. Not only does the section contain no such express limitation but the language of § 2649 expressly providing that the commissioner shall collect for the hospital support of one committed under that section "in the manner provided in [section] 2650" requires this conclusion. Therefore, the words quoted from § 2649 are effective to import into § 2649 only so much of § 2650 as imposes a duty of payment for a pauper upon the town. Neither section makes notice to the town a prerequisite to its liability. Under the statutes as so construed, the fact that Blum did not become a pauper until after he had been committed to the state hospital did not render notice to the defendant of his status a condition precedent to its liability for his hospital support from August 29, 1947, to November 8, 1949. In other words, §§ 2649 and 2650 together express a legislative intent that, regardless of whether a person has been committed as an indigent or a pauper, the state is entitled to recover from his town of settlement for his support for such time as he is a pauper inmate of a state mental hospital, without giving notice under § 2594.

What has been said is determinative of the defendant's liability under the facts stipulated in the present case. It does not, however, fully meet the two questions reserved, which are not restricted to those specific facts. A complete answer to the questions as worded might well involve consideration of an indigent person who becomes a pauper after being committed under § 2651 of the General Statutes, which is entitled, "Commitment of mentally ill indigents." This section neither refers to a commitment

on an application by the commissioner of welfare nor contains any provision such as that in § 2649 authorizing the commissioner to collect from a town for the hospital support of one committed under it. Our answers to the questions are qualified accordingly.

To the first and second questions in the reservation we answer: "A town wherein a pauper has legal settlement is liable at the statutory rate for his care as a patient in a state hospital for mental illness from the time of the initial existence of such status, without formal notification to the town by the state that the patient has a pauper status, if he was committed pursuant to § 2649 of the General Statutes."

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.